REGINA SKILLIN, Administratrix of the Estate of JAMES BURGESS, Deceased Employee and/or Deceased Sole Proprietor, Plaintiff v. MAGNA CORPORATION/GREENE'S TREE SERVICE, INC., Employer, SELF-INSURED (Gallagher Bassett Services, Inc., Administrator), Defendant

No. COA01-768

(Filed 6 August 2002)

**1. Workers' Compensation— work-related injury—degenerative disk disease**

The Industrial Commission did not err in a workers' compensation case by concluding that the now deceased employee's degenerative disk disease in his back was a work-related injury that occurred on-the-job when decedent stepped back from a tree he was cutting and into a hole, because: (1) plaintiff administratrix presented lay testimony at the hearing, as well as medical testimony and records from three physicians, that established competent evidence supporting this finding; and (2) even if decedent's injury at work aggravated a pre-existing condition, the resulting disability is nonetheless compensable.

## 2. Worker's Compensation— disability—released to return to work

The Industrial Commission did not err in a workers' compensation case by finding that the now deceased employee remained disabled after he was released to return to work on 26 June 1998 by a doctor even though defendant attempted to perform a number of jobs on his own that were outside of his restrictions, because there was competent evidence to support the Commission's finding that defendant employer did not have an actual position available within decedent's work restrictions and that defendant never notified decedent of any job.

## 3. Workers' Compensation— findings of fact—conclusions of law—credible evidence .

Although defendants contend the Industrial Commission erred in a workers' compensation case by failing to base its findings of fact and conclusions of law on credible competent evidence, the full Commission is the sole judge of the weight and credibility of the evidence.

Appeal by defendants from opinion and award entered 8 February 2001 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 14 March 2002.

*Root & Root, P.L.L.C., by Louise Critz Root, for the plaintiff-appellee.*

*McAngus, Goudelock & Courie, P.L.L.C., by John T. Jeffries and Christine Latona, for the defendants-appellants.*

HUDSON, Judge.

Defendants appeal from an opinion and award of the North Carolina Industrial Commission (the "Commission") giving workers' compensation benefits to Regina Skillin ("plaintiff") as the administratrix of the estate of James Stanley Burgess ("Burgess" or "decedent"). We affirm.

Relevant to this appeal are the following facts, as found by the Commission. Decedent was a "self-employed independent contractor" who performed tree climbing and other logging services for Greene's Tree Service, Inc. ("Greene's"). Greene's leased employees and subcontractors to Magna Corporation ("Magna"). The parties stipulated that Greene's secured workers' compensation insurance for decedent through Magna, and that Greene's deducted pre-

mium payments of $80.03 from decedent's weekly check to cover Greene's purchase of workers' compensation insurance for decedent.[1] Burgess contended that he was injured on or about 6 April 1998, when he stepped back from a tree he was cutting and into a hole. He testified,

> I was cutting big pine tree logs that had been marked off into log sections, was sawing through them. And I had finished sawing a log off, and I was just tired from being bent over. It was a big saw that I was working for—with. It was a Huska Varna (phonetic) 394. It was a big saw. And my back was tired and tense. I had my back like in an arched back position, took about two steps and stepped into a rut that wasn't more than maybe a foot and a half. And when I stepped into that rut, it felt like somebody had stabbed me in my back or something—you know, it just—instant pain right then.

Burgess filed a claim for workers' compensation with the Industrial Commission, and Deputy Commissioner Glenn heard the testimony and issued a decision on 17 March 2000 awarding compensation. Defendants appealed. Burgess died on 20 March 2000 and the Commission allowed decedent's mother, Ms. Skillin, as administratrix of his estate to proceed as substituted plaintiff. *See* N.C. Gen. Stat. § 97-37 (2001) ("Where injured employee dies before total compensation is paid."); *see also Wilhite v. Liberty Veneer Co.*, 47 N.C. App. 434, 267 S.E.2d 566 (1980) (holding that a claimant's estate may recover all unrecovered benefits to which the claimant would have been entitled had he lived), *rev'd on other grounds*, 303 N.C. 281, 278 S.E.2d 234 (1981). As plaintiff, decedent's mother also claimed death benefits pursuant to N.C. Gen. Stat. § 97-38 (2001). The Commission entered an Order to stay the proceedings in the claim for death benefits during this appeal.

On 8 February 2001, the Full Commission affirmed an award of compensation to decedent and found as fact:

---

1. The Workers' Compensation Act expressly provides that an agreement between an employer and employee to deduct workers' compensation premiums from paychecks is not valid and may constitute a misdemeanor. *See* N.C. Gen. Stat. § 97-21 (2001). Here, the Deputy Commissioner found as fact, in spite of the parties' stipulation that decedent was an independent contractor, that he was an employee, and then ordered reimbursement to him of premiums withheld. The Full Commission found that he was an independent contractor, and deleted the reimbursement. Although the record does not reveal any basis (other than the stipulation) for the finding that decedent was an independent contractor, this finding has not been challenged by plaintiff on appeal.

SKILLIN v. MAGNA CORP./GREENE'S TREE SERV., INC.

[152 N.C. App. 41 (2002)]

5. Defendant paid decedent at a rate of $12.00 per hour. Decedent and the other employees normally worked a 10 hour day four days per week. Decedent normally earned $384.00 per week for working four days. If decedent worked on Friday or Saturday he was paid $100.00 cash for each day but this was not reflected on the payroll books of defendant. Defendant did not withhold any deductions from decedent's pay except for $80.03 per week to cover workers' compensation premiums. Decedent was not paid by the job or at a fixed rate for any of the jobs he performed for defendant. Defendant has not provided a Form 22 or any tax statements indicating decedent's wages.

6. On or about April 6, 1998 decedent was working on a job site, having been sent there by defendant. As he stepped back from a tree he was cutting, he stepped into a hole and when he did he felt immediate pain in his lower back. Decedent continued to work thinking the pain would go away. Decedent completed the job. The next morning plaintiff told Mr. Greene that he thought he might have injured his lower back the day before when plaintiff stepped into a hole as he was cutting a tree.

7. Decedent continued to work at his normal job until the pain became so severe that he was unable to continue to work. When decedent told Mr. Greene that decedent needed to see a doctor, Mr. Greene told him that if decedent went to see a doctor, decedent's workers' compensation premiums would increase.

8. Defendant sent decedent to see Dr. John B. Lange. Dr. Lange initially saw decedent on or about May 7, 1998. Decedent told Dr. Lange that he had injured his back when he had stepped into a hole while walking away from a tree he was cutting, and while he was carrying a chainsaw. Decedent told Dr. Lange that his back had progressively gotten worse since then and he did not get any relief from aspirin. Dr. Lange diagnosed decedent's condition as a low back strain and gave decedent work restrictions. Dr. Lange evaluated decedent as being able to lift up to twenty-five pounds occasionally with no pulling, pushing, bending, or climbing.

9. Decedent's condition continued to worsen and Dr. Lange had an MRI performed. The MRI showed that decedent had a disc herniation with an extruded fragment. When Dr. Lange reviewed the MRI, he changed decedent's restrictions to no squatting, climbing, or reaching if he was lifting, no over-the-shoulder

work, and no lifting more than five pounds. Dr. Lange evaluated decedent as being able to sit for six hours a day, 30 minutes at a time. Dr. Lange referred decedent to the Blue Ridge Bone & Joint Clinic.

10. Defendant did not have any light duty work within the restrictions given to decedent. Mr. Greene indicated that he had a job for decedent cleaning and sharpening the chainsaws and other equipment, delivering equipment to work sites, and stump removal. Mr. Greene and Ms. Judy B. Allen testified that although this was work that needed to be done, it was not done on a regular basis and was not advertised to the public as a viable position. The maintenance work on chainsaws was normally done when it was raining or there was not other work to be performed by the employees. Stump removal was done approximately 2 to 3 times per week, but the record is unclear regarding the actual time spent per week on stump removal.

11. Although decedent and his medical providers advised defendant of decedent's need for light duty work, defendant did not inform decedent that they had any light duty work for decedent to perform.

. . .

13. Dr. Harley released decedent to return to light duty work on or about June 26, 1998. Decedent was restricted to no lifting over twenty pounds and no frequent bending. Defendant did not have a job for decedent that was within these restrictions.

. . .

16. Decedent attempted to do a number of different jobs since last working for defendant. Those jobs included driving a forklift, laying tile, putting in septic tanks, cutting firewood, and other odd jobs. Decedent was paid $3,734.00 for performing these jobs, and he had to pay $400.00 for help he needed to perform the jobs, leaving him a net of $3,334.00 in earnings. Decedent was unable to continue performing any of these jobs due to the pain he experienced while performing them.

17. Decedent continued to have problems with his back and was seen and initially treated by Dr. James Joseph Hoski, an orthopedic surgeon, on March 3, 1999. Decedent told Dr. Hoski of having experienced an injury to his back when he stepped in a

hole while cutting a tree with a chainsaw. Dr. Hoski reviewed the previously taken MRI film of decedent's back. It was Dr. Hoski's opinion after reviewing the film that decedent suffered a herniated nucleus pulposus at L5-S1, and that the herniation had resulted from the incident when he had stepped in the hole on April 6, 1998.

. . .

19. When Drs. Harley and Hoski were asked if decedent could have done the various jobs that he performed after his release in June 1998 such as driving a forklift, cutting and hauling firewood, digging holes, setting posts, and doing renovation work on houses with the kind of injury decedent had sustained, neither doctor changed his respective opinion as to decedent's diagnosis or as to decedent's restrictions. Dr. Harley noted that people would sometimes take jobs that they should not have when they had to work for family survival. Dr. Harley went on to say that he thought decedent should have a desk job in which decedent was not lifting at all, but he did not think that such a position would be made available to decedent.

The Full Commission concluded that decedent was entitled to benefits and that:

2. Decedent sustained a compensable injury by accident arising out of and in the course of his employment on or about April 6, 1998. N.C. Gen. Stat. 97-2(6).

3. Decedent's average weekly wage on April 6, 1998 was $384.00 per week, which yields a compensation rate of $256.01 per week. N.C. Gen. Stat. 97-29.

4. Plaintiff is entitled to receive temporary total disability benefits at the rate of $256.01 per week from May 7, 1998 and continuing until March 20, 2000, the date of decedent's death. Defendant is entitled to a credit in the amount of $3,334.00 for the wages decedent earned after May 7, 1998 and is not obligated to pay plaintiff compensation during the period decedent was incarcerated. N.C. Gen. Stat. 97-29. Parker v. Union Camp, 108 N.C. App. 85, 422 S.E.2d 585 (1992).

5. Decedent was entitled to receive medical benefits for so long as they affected a cure, gave relief and/or lessened decedent's period of disability. N.C. Gen. Stat. 97-25.

The Commission awarded, in addition to costs and a twenty-five percent attorney's fee, the following:

1. Subject to attorney's fees hereinafter awarded, defendant shall pay to plaintiff temporary total disability benefits at the rate of $256.01 per week from May 7, 1998 and continuing thereafter until March 20, 2000. All accrued compensation shall be paid in one lump sum. Defendant is entitled to a credit in the amount of $3,334.00 that shall be deducted from this amount. No compensation benefits are owing to decedent for the period of decedent's 10-day incarceration.

2. Defendant shall pay for all medical expenses incurred by decedent as a result of the compensable injury to the extent that such evaluations, treatments and examinations were required to effect a cure, give relief and/or lessen decedent's period of disability.

Defendants appeal.

On review of a decision of the Commission, we are "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). An appellate court reviewing a workers' compensation claim "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

The Full Commission is the "sole judge of the weight and credibility of the evidence." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Furthermore,

the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one

witness over another or believes one piece of evidence is more credible than another.

*Id.* at 116-17, 530 S.E.2d at 553. Additionally, in making its determinations, the Commission "is not required . . . to find facts as to all credible evidence. That requirement would place an unreasonable burden on the Commission. Instead the Commission must find those facts which are necessary to support its conclusions of law." *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000) (internal quotation marks omitted) (alteration in original); *see* N.C. Gen. Stat. § 97-86 (2001). Moreover, the Commission must "make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977).

[1] In their first argument, defendants contend that the Commission erred in finding that decedent sustained a work-related injury. Defendants argue that decedent has not met his burden of proving that his injury was work-related, and that the evidence indicates that his back problems were merely the aggravation of a pre-existing degenerative back condition. Defendants contend that the medical evidence presented at trial and found as fact in the Commission's findings 9, 17, and 19 is speculative and should have been disregarded by the Commission. We disagree.

The plaintiff in a workers' compensation claim does bear the burden of proving that his injury was work-related. *See Gibbs v. Leggett and Platt, Inc.*, 112 N.C. App. 103, 107, 434 S.E.2d 653, 656 (1993). Here, the plaintiff presented lay testimony at the hearing, as well as medical testimony and records from three physicians, Drs. Lange, Harley, and Hoski.

Dr. Lange testified that he first saw decedent 7 May 1998, decedent gave him a description of his injury consistent with his testimony at the hearing, and Dr. Lange diagnosed decedent's condition as low back strain. Doctor Lange restricted decedent's work to an "occasional 25-pound lift, that he was to do no pulling or pushing, no bending, or climbing. . . . There were restrictions on reaching and overhead work." At the time, Dr. Lange prescribed two muscle relaxants for decedent to help him sleep while in pain. Dr. Lange saw decedent again on 15 May 1998 and found that decedent's low back strain was accompanied by radicular complaints. On 18 May 1998, decedent reported to Dr. Lange such increased pain and back problems, that Dr. Lange ordered a "prompt MRI." On 3 June 1998, Dr. Lange changed

decedent's restrictions to no "squatting, climbing, reaching if he was lifting, any over-the-shoulder work and not to lift more than five pounds; that he could sit for as much as six hours a day, half hour at a time." After the MRI, Dr. Lange diagnosed decedent with a disk herniation with an extruded fragment, which would most likely require surgery. This undisputed testimony was reflected in the Commission's findings of fact numbers 8 and 9.

Dr. Lange then referred decedent to Dr. Harley, an orthopedic spine surgeon. Dr. Harley testified that he first saw the decedent on 12 June 1998, and that decedent reported the April incident as the cause of his injury. Decedent told Dr. Harley that he had experienced back pain in the past, but that it had never been as severe as it was at that time. Dr. Harley reviewed decedent's MRI and found "quite severe disk degeneration at L5-S1 with an associated disk bulge. There was also some degeneration at 4-5, though with less narrowing. . . . L2 was also slightly degenerated." He found evidence of posterior bulging in the disk, but no evidence of a compressed nerve. He diagnosed decedent with "degenerat[ed] disk disease in his back associated with the on-the-job injury." Dr. Harley also testified that decedent "probably had some back symptoms before the injury. Clearly the injury made him worse." However, Dr. Harley could not say for certain that his condition existed before the injury or whether the injury caused the condition. Dr. Harley testified that decedent had reached "maximum improvement" in that "there is not a whole lot else that I can do and [he was] relatively comfortable" and "if he had a light job, he probably could return to work." Dr. Harley released decedent from his care on or about 26 June 1998 with work restrictions. Dr. Harley's testimony was reflected in the Commission's findings of fact numbers 12, 13, and 19.

Dr. Hoski, an orthopedic surgeon, testified that he saw decedent for the first time on 3 March 1999. Again, decedent described the April incident as causing his injury. Dr. Hoski diagnosed decedent as having "a herniated nucleus pulposus of the bottom disk, L5-S1." He testified that "[b]ased on the history taken and the medical records that were available, [he] felt within a reasonable degree of medical probability that [decedent's] problems were due to his work-related injury of April 9th, 1998." Dr. Hoski specifically disagreed with Dr. Harley's assessment that decedent could have had "preexisting degenerative disk disease" because "[t]o degenerate is to age. To call it a disease means that it's abnormal. If [decedent] didn't have problems with it, it really wasn't degenerative disk disease; it was a—it

was an aging change." Dr. Hoski opined that decedent could perform a sedentary job with negligible lifting of weight and, that as of 2 August 1999, decedent could not return to his job with Greene's. Dr. Hoski's testimony is reflected in the Commission's findings of fact numbers 17 and 19.

In determining whether the Commission's findings of fact are supported by any competent evidence, we note that the Commission is "the sole judge of the credibility of the witness and the weight to be given its testimony." *Weaver v. American National Can Corp.*, 123 N.C. App. 507, 510, 473 S.E.2d 10, 12 (1996) (internal citations and quotations omitted). Here, the Commission gave Dr. Hoski's opinion significant weight in determining what produced decedent's condition. *See e.g., Chapman v. Southern Import Co.*, 63 N.C. App. 194, 196, 303 S.E.2d 824, 825 (1983) ("If there is evidence of substance which directly or by reasonable inference tends to support the findings, the Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary."). Dr. Hoski clearly stated that in his opinion, decedent's back problems were the result of his work-related injury. Even Dr. Harley indicated that if decedent had some preexisting back pain, as alleged by the defendants, "[c]learly the injury made him worse." It is well-established that even if decedent's injury at work aggravated a pre-existing condition, the resulting disability is nonetheless compensable. *See Wilder v. Barbour Boat Works*, 84 N.C. App. 188, 352 S.E.2d 690 (1987). Applying the appropriate standard of review, we find that the Commission's findings of fact establishing that decedent suffered a work-related injury are supported by competent evidence.

Next, we examine whether the findings of fact support the Commission's conclusions of law. Findings of fact numbers 6, 7, 8, 9, and 17, among others, specifically describe decedent's injury, its effects, and his medical history subsequent to that incident. These findings support the Commission's conclusion of law number 2 that decedent suffered a compensable work-related injury. Because it found that decedent sustained a work-related injury, the Commission acted properly in concluding that decedent was entitled to an award of benefits pursuant to N.C. Gen. Stat. §§ 97-25 & 97-29 (2001).[2]

---

2. We question whether there is any statutory authority for the Commission's conclusion that "[d]efendant is entitled to a credit in the amount of $3,334.00 for the wages decedent earned after May 7, 1998" working for employers other than defendant. *See* N.C. Gen. Stat. § 97-42 (2001). However, because the plaintiff has not cross-assigned error to this issue, we need not resolve it.

Plaintiff has carried the burden of proving that he sustained a work-related injury and, thus, we reject defendants' first argument.

[2] In their second argument, defendants contend that the Commission erred in finding that decedent remained disabled after he was released to return to work on 26 June 1998 by Dr. Harley. Defendants argue that Greene's offered decedent positions within his restrictions, but that decedent refused to return to work. Defendants contend that because decedent's refusal to work was unjustified, he is barred from recovering workers' compensation benefits during that period of time. Again, we are "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. Defendants' contentions here are based on the Commission's findings of fact numbers 9, 10, 11, 12, 13, 14, and 16. However, in these findings the Commission found that after receiving Dr. Lange's restrictions, Greene's "did not have any light duty work within the restrictions given to decedent. . . . Although decedent and his medical providers advised [Greene's] of decedent's need for light duty work, [Greene's] did not inform decedent that they had any light duty work for decedent to perform." Decedent then saw Dr. Harley, who eventually "released decedent to return to light duty work on or about June 26, 1998. Decedent was restricted to no lifting over twenty pounds and no frequent bending. [Greene's] did not have a job for decedent that was within these restrictions."

We believe that the testimony at the hearing before the Deputy Commissioner provides "competent evidence" to support these findings. For example, Mr. Greene of Greene's testified that there was no specific full-time maintenance position, but that workers were able to keep the equipment maintained by working when it rained. In addition, he testified:

Q. Okay. When [decedent] saw you whenever and said he wanted to come back and work, you didn't say "Come on down. We've got a job for you," did you?

A. No, I didn't.

Q. Okay. You haven't written or called him offering him work, then, since then, have you?

A. No.

Mr. Greene testified that the job in the shop was not one that was ever advertised to the public, because it was a job performed by employees who required only a couple of days of recuperation for some minor injury.

Mr. Greene's administrative assistant, Judy Allen, also testified that Greene's had light duty work available within decedent's restrictions. However, on cross-examination, Ms. Allen admitted that another employee was already doing this work, and that the company did not have full-time light duty jobs available. Ms. Allen also testified that she attempted to let decedent know that she had some light duty work by calling his mother and speaking to his sister, but she admitted that she neither spoke directly to decedent, nor sent him written notification of available work. In sum, there is competent evidence to support the Commission's finding that Greene's did not have an actual position available within decedent's work restrictions, and that they never notified him of any job. The Commission made the following additional findings of fact:

> 14. In July and August 1998, in exchange for rent, decedent and his family members did repair work to a house in which he and his family were living. Decedent had two minor children in his custody.

> 15. Following his injury, decedent began to receive welfare benefits because he was unable to work and support his family and himself.

> 16. Decedent attempted to do a number of different jobs since last working for [Greene's]. Those jobs included driving a forklift, laying tile, putting in septic tanks, cutting firewood, and other odd jobs. Decedent was paid $3,734.00 for performing these jobs, and he had to pay $400.00 for help he needed to perform the jobs, leaving him a net of $3,334.00 in earnings. Decedent was unable to continue performing any of these jobs due to the pain he experienced while performing them.

Decedent attempted to perform a number of jobs on his own as found by the Commission in finding of fact number 16, even though the jobs were outside of his restrictions. These findings are fully supported by the testimony at the hearing. Defendants' second argument has no merit.

[3] Finally, defendants contend that the Commission did not base its findings of fact and conclusions of law on credible "competent" evi-

dence. Again, the Full Commission is the "sole judge of the weight and credibility of the evidence." *Deese,* 352 N.C. at 116, 530 S.E.2d at 553. "When the Commission's findings of fact are supported by competent evidence, they are binding on the reviewing court in spite of the existence of evidence supporting contrary findings." *Hendrix v. Linn-Corriher Corp.,* 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). Defendants would have this Court reexamine the credibility of witnesses and re-weigh the evidence despite the clearly established standard of review; this we decline to do. We reject defendants' third argument.

We hold that the Commission considered the evidence appropriately, made sufficient findings of fact, drew proper conclusions of law based thereon, and entered an appropriate award. Accordingly, we affirm the opinion and award.

Affirmed.

Judges MARTIN and THOMAS concur.