HERMAN W. GIBBS, Employee v. LEGGETT AND PLATT, INC., Employer, and TRANSPORTATION INSURANCE COMPANY, Carrier

No. 9210IC850

(Filed 21 September 1993)

**Master and Servant § 68 (NCI3d) — workers' compensation — torn rotator cuff — occupational disease — causes characteristic of and peculiar to his employment — sufficiency of evidence**

The Industrial Commission's conclusion that plaintiff's spontaneous tear of the rotator cuff resulted from causes or conditions which were "characteristic of and peculiar to" his employment was supported by proper findings based upon competent evidence, and the Commission properly determined that plaintiff suffered from an occupational disease, where plaintiff was a janitor who operated a 500-pound, self-propelled power sweeper every other day for approximately seven hours; plaintiff and other employees noticed that the machine started pulling slightly to the right; plaintiff gradually started having pains in his right arm and shoulder and then experienced swelling and discoloration; plaintiff was diagnosed as having a spontaneous tear of the rotator cuff resulting from repeated stress or low impact trauma; an orthopaedist who performed arthroscopic surgery on plaintiff testified that his injury was consistent with the type of work plaintiff performed and that

plaintiff's work placed him at a higher risk than the general public for injuries to the shoulder or arms; and defendant conceded that there was competent evidence to support a finding that the disease was due to causes and conditions "characteristic of plaintiff's employment" and that the disease was not an ordinary disease of life to which the general public is equally exposed outside the employment. N.C.G.S. § 97-57(13).

**Am Jur 2d, Master and Servant §§ 123, 124, 187 et seq.**

Appeal by defendant from Opinion and Award of the North Carolina Industrial Commission filed 21 May 1992. Heard in the Court of Appeals 17 June 1993.

*Snow & Skager, by James M. Snow, for plaintiff-appellee.*

*Young, Moore, Henderson & Alvis, P.A., by Richard J. Archie and J. D. Prather, for defendant-appellant.*

WYNN, Judge.

Plaintiff, Herman W. Gibbs, worked as a janitor for defendant, Leggett & Platt, Inc. Over the course of ten months, he developed swelling and discoloration in his right shoulder which was diagnosed as the result of a "spontaneous" tear of the rotator cuff. Plaintiff filed a claim seeking recovery for an occupational disease pursuant to N.C.G.S. § 97-53(13), arguing that his injury occurred as a result of his operation of a power sweeper. Both parties presented evidence and Deputy Commissioner Lawrence B. Shuping filed an Opinion and Award which contained the following pertinent findings of fact:

1. Plaintiff's claim is for a disabling torn rotator cuff in the right shoulder due to repetitive stress to his right arm and shoulder from operating a power sweeper in the course of his janitor's job for defendant-employer, which (disease or condition) is characteristic of and peculiar to employment in the same trade, occupation or employment wherein, as compared to members of the general public and other employments at large, where there is an increased risk of developing the same condition because it requires manual labor involving use, and ultimately overuse of the arm and shoulder.

. . .

GIBBS v. LEGGETT AND PLATT, INC.

[112 N.C. App. 103 (1993)]

2. Plaintiff is a 61-year old married male with a fourth grade education.

Although plaintiff has reached maximum medical improvement from the involved shoulder condition giving rise hereto, been rated for his resulting permanent-partial disability and released to return to work by his treating physician, Dr. Wheeler [sic]; plaintiff has not attempted to return to work. . .; however, at this point there is no medical evidence in the record as to the limitations of the permanent shoulder injury involved so that a determination might be made as to the extent of any whole or partial incapacity to work as a result of the involved shoulder injury—much less the resulting extent of plaintiff's permanent-partial disability.

. . .

4. . . . The involved Model 186 LPG Tennant Sweeper was a self-propelled, three wheeled motorized power sweeper, which weighed some 500 pounds, was controlled by hand clutch, equipped with a brush on it's right side and had a natural tendency to drift and/or pull to the right requiring plaintiff, who is admittedly a small man, to use both hands in operating the same machine at least several hours every other day at work.

5. Due to the repetitive stress to his right arm and shoulder from operating the above-described Tennant power sweeper in the course of his employment as a janitor for defendant-employer, plaintiff not only sustained a spontaneous tear of his right rotator cuff on 4 January 1990 but months earlier had become [sic] developing impingement syndrome in the same shoulder resulting in progressively worsening shoulder pain and a slow, but steady tear of the rotator cuff until it's ultimate spontaneous rupture on the first mentioned date.

. . .

8. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following his torn right rotator cuff on or about August 17, 1990 when he was last seen by Dr. Wheeler [sic] and does retain some degree of permanent-partial disability as a result of his torn right rotator cuff.

GIBBS v. LEGGETT AND PLATT, INC.

[112 N.C. App. 103 (1993)]

Based upon these and other findings, the deputy commissioner concluded as a matter of law that:

1. Due to the hereinabove-described repetitive stress to his right arm and shoulder from operating the Model 186 LPJ [sic] Tennant sweeper in the course of his regular janitor's job for defendant-employer, plaintiff has developed a disabling torn right rotator cuff, which (disease or condition) is thus due to causes and conditions which are characteristic of and peculiar to his particular trade, occupation or employment because it requires manual labor involving use, and ultimately overuse, of the arm and shoulder, but excluding all ordinary diseases of life to which the general public is equally exposed outside of that employment. Plaintiff has thus contracted a compensable occupational disease pursuant to the provisions of G.S. § 97-53(14) [sic].

2. As a result of the occupational disease giving rise hereto plaintiff was temporarily totally disabled from January 5, 1990 to June 25, 1990 when he was released to return to work by Dr. Wheeler [sic] entitling him to compensation at a rate of $165.33 per week during the same period; however, pending evidence as to the extent of plaintiff's permanent-partial disability and any resulting physical limitations therefrom a determination cannot be made as to whether plaintiff remains wholly or partially disabled since June 25, 1990.

3. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following the occupational disease giving rise hereto on or about August 17, 1988 and does retain some degree of permanent-partial disability; however, a determination as to the extent thereof cannot be determined in the absence of further medical evidence.

Based upon the findings and conclusions, the deputy commissioner awarded benefits. Defendants appealed to the Commission and the Full Commission affirmed and adopted the opinion and award of the deputy commissioner. Defendants thereafter appealed to this court. We affirm.

---

I.

Defendants-appellants argue that the Full Commission's conclusion that plaintiff's condition or disease resulted from causes and

GIBBS v. LEGGETT AND PLATT, INC.

[112 N.C. App. 103 (1993)]

conditions which are "characteristic of and peculiar to" his employment is not supported by proper findings based upon competent evidence and, therefore plaintiff is not entitled to compensation for an occupational disease pursuant to N.C.G.S. § 97-53(13).

The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there is evidence to support contrary findings. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981). As a result, our review is limited to two specific questions: 1) Whether the findings of fact are supported by any competent evidence, and 2) Whether those findings of fact in turn justify the legal conclusions and decision. *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E.2d 101 (1981).

For a disability to be compensable under the Workers' Compensation Act, it must be either the result of an accident arising out of and in the course of employment or an "occupational disease." *Id.; Booker v. Duke Medical Center*, 297 N.C. 458, 564, 256 S.E.2d 189, 194 (1979). An occupational disease is defined as:

> Any disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C.G.S. § 97-53(13) (1991). The North Carolina Supreme Court has outlined three elements necessary to prove the existence of an "occupational disease" under N.C.G.S. § 97-53(13). The disease must be:

> (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

*Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (citing and quoting *Hansel v. Sherman Textiles*, 304 N.C. at 52, 283 S.E.2d at 105-06 (1981); and *Booker*, 297 N.C. at 468, 475, 256 S.E.2d at 196, 200). Plaintiff bears the burden of proving every element of compensability. *Hansel*, 304 N.C. at 54, 283 S.E.2d at 106.

Defendants concede that there is competent evidence to support a finding that 1) the disease is " 'characteristic of' the employment such that there is a 'recognizable link between the nature of the job and an increased risk of contracting the disease in question' " and 2) that the disease is not an "ordinary disease of life 'to which the general public is equally exposed outside of the employment.' " Defendants contend however, that there was insufficient evidence in this case to support the Commission's finding of fact that plaintiff's torn rotator cuff is "peculiar to" his employment as a janitor.

To qualify as "peculiar to" the employment, defendants argue, citing *Booker*, that the "conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations." In *Booker*, Chief Justice Sharp writing for our Supreme Court conducted a thorough examination of other jurisdictions with similar occupational disease statutes and set forth the test for determining whether a disease is "characteristic of and peculiar to" a trade or profession. We need not repeat that full examination, however, the Court therein noted that a particular illness need not be "unique" to an injured employee's profession to be compensable. Rather, the Court held that in the final analysis, where the evidence supported a determination that the injured employee's "job exposed him to a higher risk of contracting the disease than members of the public or employee in general," this was sufficient to support the conclusion that the employee's disease is characteristic of and peculiar to his occupation. The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workman's compensation. *Booker*, 297 N.C. at 475, 256 S.E.2d at 200. Thus, only those ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded. *Id.; Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365.

Our Courts have consistently followed the guidelines established in *Booker. See Thomason v. Fiber Industries*, 78 N.C. App. 159, 336 S.E.2d 632 (1985), *disc. rev. denied*, 316 N.C. 202, 341 S.E.2d 573 (1986) (Occupational disease found where repeated lifting, straining and pulling placed plaintiff at a greater risk of contracting inflammatory disease than the public at large.); *Perry v. Burlington Industries*, 80 N.C. App. 650, 655, 343 S.E.2d 215, 219 (1986) (Occupational disease is compensable if employment exposed

claimant "to a greater risk of contracting [the] disease than members of the public generally. . ."); *Keel v. H & V Inc.*, 107 N.C. App. 536, 421 S.E.2d 362 (1992); *Rutledge*, 308 N.C. at 93-94, 301 S.E.2d at 365; *Lumley v. Dancy Const. Co.*, 79 N.C. App. 114, 339 S.E.2d 9 (1986).

The following evidence was offered to support the Commission's finding that the spontaneous tear of the rotator cuff is an occupational disease within the meaning of N.C.G.S. § 97-57(13). In March of 1989, Leggett and Platt purchased a five hundred pound, three wheel, Tennant Power Sweeper. The sweeper is self-propelled and operated by depressing a hand clutch. Plaintiff testified that he operated the sweeper every other day for approximately seven hours. Plaintiff and other employees noticed that the machine started pulling slightly to the right. Plaintiff gradually started having pains in his right arm and shoulder. By January of 1990, he experienced swelling and discoloration.

Dr. Edward Weller, an orthopaedist, diagnosed plaintiff as having a "spontaneous" tear of the rotator cuff resulting from repeated stress or low impact trauma. The diagnosis was confirmed on 14 February 1990 by arthroscopy and surgery. Dr. Weller testified that plaintiff's injury was consistent with the type of work plaintiff performed and that plaintiff's work placed him at a higher risk than the general public for injuries to the shoulder or arms. This evidence is sufficient to meet the test set forth in *Booker* for determining whether a disease meets the "peculiar to" requirement set forth in the statute. Furthermore, defendant concedes that there is competent evidence to support a finding that the disease is due to causes and conditions "characteristic of plaintiff's employment" and that the disease is not an ordinary disease of life to which the general public is equally exposed outside the employment.

For the foregoing reasons, we find the Commission properly determined that plaintiff suffered from an occupational disease within the meaning of N.C.G.S. § 97-53(13) and the opinion and award of the Full Commission is

Affirmed.

Judges JOHNSON and JOHN concur.