***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Chief Deputy Commissioner Gheen.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on the date of plaintiff's alleged injury.
2. An employment relationship existed between plaintiff and A.G. Industries (AGI).
3. Liberty Mutual Insurance Company was the insurer on the risk at the time of the alleged injury.
4. Plaintiff contends that the date of the alleged injury was on or about May 26, 2000.
5. The alleged nature of plaintiff's injury is carpal tunnel syndrome (CTS) in the left wrist, resulting in disability to the left upper extremity.
6. The parties stipulated at the hearing before the Deputy Commissioner that plaintiff's average weekly wage at the time of the reported onset of symptoms, as shown by the submitted Form 22, is $520.65, which yields a compensation rate of $347.107.
7. Plaintiff's claim is for temporary total disability compensation from June 29, 2000, through the date of the hearing before the Deputy Commissioner and continuing, and compensation for medical treatment and future medical treatment as needed.
8. The last date that plaintiff worked for AGI was June 29, 2000.
9. At hearing before the Deputy Commissioner, the following documents were admitted into evidence, and marked as follows:
a. Stipulated Exhibit #1: Pre-Trial Agreement.
b. Stipulated Exhibit #2: Plaintiff's personnel records.
c. Stipulated Exhibit #3: Videotape.
d. Court Exhibit #1: Index of plaintiff's medical record.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was thirty-four years old at the time of the hearing before the Deputy Commissioner. He earned a B.S. Degree in Industrial Management from Gardner Webb College. Plaintiff is left hand dominant.
2. Plaintiff began his employment with AGI in 1991, and was employed by AGI through June 29, 2000.
3. AGI designs and manufactures creative display fixtures for greeting cards and other merchandise that are sold by its parent company, American Greetings, as well as other companies.
4. Beginning in October 1996, plaintiff operated a CNC 5 axis router. The axis router cuts a piece of stock, wood, or plastic using a jig, or template, which controls the design of the cut. Operation of the axis router required plaintiff to load a jig by securing it with an average of six bolts. Jigs range in weight from approximately twenty to more than 100 pounds. Plaintiff would align the jig in its proper position and would next load the sheet of plastic to be cut onto the axis router. The typical size of the plastic sheet is six feet and weighs five to thirty pounds. The plastic sheet is then sealed. If not properly sealed, the plastic would vibrate. After loading the jig and sealing it, plaintiff operated the machine, checked the dimensions of his product, and then cleaned the area by use of an overhead air hose. Occasionally, an air drill was also used to create holes in the plastic part as needed. Plaintiff had no problems in performing the above job duties until his left arm began bothering him on January 13, 2000.
5. Plaintiff's symptoms in January 2000 were distinctly similar to problems he experienced with his hands in 1996. The record shows that plaintiff was evaluated and treated in 1996 by Dr. Gregory J. Dray and Dr. William Lyday. Treatment consisted of epidural injections and a splint. The medical records establish that plaintiff was noted to have a vitamin B-12 deficiency and possible thoracic outlet syndrome, with either condition possibly causing his symptoms at that time.
6. In June 2000, plaintiff reported pain and numbness in his left hand, arm, and wrist. He alleged his pain was caused by his job duties operating the axis router. AGI filed a Form 19 on June 30, 2000. Plaintiff filed a Form 18 on January 17, 2001. AGI did not file a North Carolina Industrial Commission Form 61, Denial of Workers' Compensation Claim.
7. Plaintiff was referred to Dr. Charles Bond on June 12, 2000. Dr. Bond objectively observed no swelling. Tinel and Phalen tests were negative, as were x-rays. Based on plaintiff's previous history of pain consistent with CTS, Dr. Bond referred plaintiff for nerve conduction studies. Dr. Bond released plaintiff to work without restrictions pending the outcome of the nerve conduction studies.
8. Dr. Anne Jackson completed nerve conduction studies on June 16, 2000. Dr. Bond interpreted such studies as supporting bilateral CTS, even though plaintiff had no subjective symptoms in his right hand.
9. Plaintiff requested and received leave under the Family Medical Leave Act from June 20 through June 27, 2000, following the birth of his daughter. He returned to work following the expiration of his FMLA request on June 28, 2000.
10. On June 29, 2000, Gray Webber, the Human Resources Manager at AGI, requested that plaintiff operate the axis router for a videotape to be used for an investigation of plaintiff's workers' compensation claim. Plaintiff refused, contending that the taping as proposed by Mr. Webber would not include some drilling activities that were previously conducted but no longer part of plaintiff's job. AGI discharged plaintiff based upon this refusal and one prior disciplinary proceeding.
11. Dr. Bond continued to treat plaintiff. However, subsequent physical exams remained essentially unchanged. On August 9, 2000, Dr. Bond restricted plaintiff from operating the axis router.
12. Dr. Bond recommended a steroid injection of plaintiff's left hand to determine if CTS was present. The injection would provide relief if plaintiff's symptoms resulted from CTS; conversely, the injection would not provide relief if plaintiff's symptoms arose from other causes. Plaintiff declined the procedure and requested a second opinion.
13. On October 17, 2000, Dr. Bond released plaintiff to work with restrictions of lifting no more than 10 pounds, and no overhead lifting or repetitive motion with the left arm. The final diagnosis was atypical CTS. Dr. Bond rated plaintiff with a twenty percent disability to his left upper extremity based on AMA guidelines, declining to use Industrial Commission rating guidelines because he found them confusing. Dr. Bond expected plaintiff to have no disability if his condition was indeed CTS and was surgically corrected. Dr. Bond testified that surgical treatment of CTS typically has a ninety-five percent success rate, resulting in a rating of zero to five percent permanent partial disability.
14. Plaintiff was referred to Dr. William Pekman in August 2000. Dr. Pekman's examination revealed some objective indicators of CTS, particularly a positive Phalen's sign. Based on plaintiff's history, a review of prior medical records, and nerve conduction studies, Dr. Pekman opined that plaintiff "probably" or "more likely" had CTS. Dr. Pekman could not exclude other systematic causes of plaintiff's symptoms, including a vitamin B-12 deficiency, even though Dr. Pekman noted that if a B-12 deficiency was the cause of plaintiff's symptoms, it would affect both hands. The record shows that plaintiff had a history of such deficiency in 1996. Dr. Pekman performed objective tests that indicated no cervical compression or compression of the nerves in plaintiff's elbows.
15. Dr. Pekman administered a steroid injection, initially recommended by Dr. Bond, which provided limited temporary relief. Dr. Pekman advised plaintiff of his treatment options, which were to do nothing or undergo CTS surgery. Plaintiff refused surgery. Dr. Pekman certified plaintiff to be at maximum medical improvement and assigned a five percent permanent partial rating to the left hand. Dr. Pekman agreed with Dr. Bond that additional treatment could lessen the disability.
16. Dr. Pekman certified that plaintiff was "totally disabled from work" when released on August 21, 2000. In his deposition testimony, Dr. Pekman could not recall the basis for giving that opinion. Dr. Pekman qualified his "total disability" certification during testimony to clarify that plaintiff could have returned to work using one hand.
17. Plaintiff has not worked since June 29, 2000. He testified that his symptoms and pain have precluded him from finding work. Plaintiff presented evidence of a sporadic job search.
18. Alan C. Gorrod, a certified ergonomic evaluation specialist, reviewed the ergonomics of the axis router position. Mr. Gorrod observed an employee performing plaintiff's job duties and then performed certain functions himself. He videotaped the job and reviewed the videotape before preparing his report. Mr. Gorrod concluded that plaintiff's job duties were not correlated to the development of CTS, and assigned a risk factor of two on a scale of ten.
19. With respect to a causal connection between plaintiff's employment and his alleged development of CTS, Dr. Bond opined that the medical and other evidence could not prove such a relationship:
 [A]s far as I know, no one can prove a causal relationship between particular jobs and carpal tunnel syndrome. . . . Carpal tunnel syndrome is a condition that affects a lot of people, it's very common. We see people in all different natures of jobs that get it. There are some correlations between certain jobs and certain activities and carpal tunnel syndrome, but correlation does not prove causation.
Dr. Bond's opinions as to causation and the degree of plaintiff's permanent partial disability are accorded little weight. First, the thrust of Dr. Bond's opinion as to causation would effectively preclude proving causation in most, if not all, workers' compensation cases. Second, Dr. Bond ignored the Industrial Commission's disability rating guides. Taken together, it appears that Dr. Bond, while entitled to his opinions, is unwilling to comport his testimony to the requirements of the Act.
20. Dr. Pekman opined that plaintiff's CTS "may" have resulted from overuse of the hand; however, Dr. Pekman did not have a detailed review of plaintiff's workplace activities or independent confirmation of the duration of such activities. Dr. Pekman reviewed Gorrod's written report but felt uncomfortable basing an opinion on the report without seeing plaintiff's job duties himself. The parties had not provided Dr. Pekman with the videotape of plaintiff's job duties for his review.
21. Dr. Pekman did opine that it would be "unlikely" for plaintiff's employment at AGI to have caused plaintiff to develop CTS, even assuming that Gorrod's report was accurate. Furthermore, because plaintiff had ceased work at AGI, Dr. Pekman would have expected improvements in plaintiff's symptoms that had not occurred.
22. The record is devoid of testimony from Drs. Bond and Pekman that plaintiff's employment at AGI exposed him to an increased risk of developing CTS or any other occupational disease compared to the general population.
23. The greater weight of the evidence establishes that plaintiff has bilateral CTS, which is symptomatic only on the left. The totality of the medical evidence indicates that plaintiff could have other conditions causing his symptoms; however, Dr. Pekman's evaluation largely excludes most of those conditions.
24. The greater weight of the evidence fails to establish that plaintiff's employment at AGI caused or appreciably aggravated his CTS. Dr. Pekman, during the course of treatment, had a minimal understanding of plaintiff's job activities, which consisted of only two sentences in his medical notes. He was not provided a videotape of plaintiff's job duties. Dr. Pekman's testimony fails to establish causation, even considering his opinions based on Mr. Gorrod's report upon which he felt uncomfortable relying.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving every element of compensability of his workers' compensation claim. Gibbs v. Leggett andPlatt, Inc., 112 N.C. App. 103, 434 S.E.2d 653, (1993) (citation omitted). The degree of proof required is the greater weight or preponderance of the evidence. Phillips v. U.S. Air, Inc.,120 N.C. App. 538, 463 S.E.2d 259 (1995), aff'd, 343 N.C. 302,469 S.E.2d 552 (1996).
2. To establish a right to workers' compensation benefits for an occupational disease under N.C. Gen. Stat. § 97-53(13), Plaintiff must prove by the greater weight of the evidence that his CTS is:
 a. characteristic of individuals engaged in the particular trade or occupation in which he was engaged at AGI;
 b. is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and
 c. there is a causal relationship between the disease and plaintiff's employment.
Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). The third element of the test is satisfied if the employment "significantly contributed to, or was a significant causal factor in, the disease's development." Rutledge, 308 N.C. at 101, 301 S.E.2d at 369-70. For the employment to constitute a "significant contributing factor," plaintiff must prove by the greater weight of the evidence that absent the employment the occupational disease "would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." Baker v. City of Sanford,120 N.C. App. 783, 788, 463 S.E.2d 559, 563 (1995) (citation omitted),disc. review denied, 342 N.C. 651, 467 S.E.2d 703 (1996).
3. Plaintiff has failed to prove by the greater weight of evidence that his work at AGI exposed him to a greater risk of developing CTS than the general public. Proof of increased risk satisfies the first two elements of the Rutledge test. Rutledge v. Tultex Corp./Kings Yarn,308 N.C. at 93-94, 301 S.E.2d at 365; Pressley v. Southwestern FreightLines, 144 N.C. App. 342, 551 S.E.2d 118 (2001) (the term "general public" is defined as pertaining to the general public of North Carolina); Minterv. Osborne Co., 127 N.C. App. 134, 487 S.E.2d 835, disc. review denied,347 N.C. 401, 494 S.E.2d 415 (1997) (statute employs an "increased risk" test and not a positional, or "but for," analysis).
4. Plaintiff has failed to prove by the greater weight of the evidence that his CTS is causally related to his employment at AGI. N.C. Gen. Stat. § 97-2.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's workers' compensation claim must be and is hereby DENIED.
2. Each party shall pay its own costs.
This 16th day of April 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER