***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Gheen, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding with some modification and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 6 November 2001 as:
 STIPULATIONS
1. The employee is Delores Smith (hereinafter "the plaintiff").
2. The employer is Wal-Mart Stores, Inc. (Sam's Club) (hereinafter "Sam's Club").
3. The carrier on the risk is American Home Assurance.
4. The employee-employer relationship existed at the time of the alleged contraction of occupational disease.
5. The average weekly wage was $289.00, yielding a compensation rate of $186.68 per week.
6. The date of the alleged contraction of the occupational disease was November 30, 1999.
7. Sam's Club regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act (hereinafter "Act").
8. The nature of the alleged occupational disease is bilateral carpal tunnel syndrome (hereinafter "CTS").
9. The plaintiff is claiming temporary total benefits from December 22, 1999, until February 6, 2001, when certified at maximum medical improvement and any permanent partial or permanent total benefits to be determined in the future.
 ***********
The following documents were admitted into evidence as:
 EXHIBITS
1. Stip. #1: Pre-Trial Agreement.
2. Stip. #2: Industrial Commission Forms.
3. Stip. #3: The plaintiff's Employment Records.
4. Stip. #4: The plaintiff's Medical Records.
5. Plaintiff's #1: The plaintiff's medical records from The Neurological Center and from Charlotte Orthopaedic Specialists, — admitted by Order filed February 8, 2002.
6. Mr. Gorrod Dep. #1: Professional Qualifications.
7. Mr. Gorrod Dep. #2: Ergonomic Job Analysis.
 *********** EVIDENTIARY RULING
At the bearing before the Deputy Commissioner, the plaintiff objected to introduction of the testimony of Al Gorrod. The plaintiff objected to the tender of Mr. Gorrod as an expert witness in the field of ergonomic evaluation and the plaintiff objected to Mr. Gorrod's testimony and introduction of Mr. Gorrod's report entitled "Ergonomic Job Analysis," (EJA) as inherently unreliable. Plaintiff's objection is OVERRULED.
 *********** FINDINGS OF FACT
1. The plaintiff was 46 years of age at the time of the hearing and completed the 11th grade.
2. Sam's Club employed the plaintiff for approximately two months beginning October 19, 1999, and ending December 21, 1999, as a cashier. She worked approximately five days a week for six to eight hours a day.
3. The plaintiff's job as a cashier required her to check out customers, transferring most merchandise from one cart to another and using a hand held price scanner with some hand keying. Sam's Club sells items in bulk, including but not limited to cleaning powders, dog food, kitty litter, flats of drinks, and cases of water. Sam's Club also merchandises larger items such as stereo equipment, televisions, furniture, and automobile tires. The plaintiff occasionally lifted items in excess of 30 pounds and up to 50 pounds. The plaintiff used both hands in gripping merchandise, some of the items being awkward for her to lift to transfer from cart to cart. The plaintiff lifted numerous items each day and performed this job six to eight hours a day approximately five days a week.
4. The plaintiff's job description, entitled "Sam's Club Job Matrix," indicates that the cashier position requires medium-frequent lifting. "Medium" is defined as lifting 50 pounds maximum, frequent lifting and/or carrying objects weighing up to 25 pounds. "Frequent" is defined as 34 percent to 66 percent of the time or 200 to 500 times a week. The job description also indicates that pushing/pulling frequency is at a medium frequent level. The job description indicates that repetitive hand actions would require firm grasping which means "grasping ability to exert sufficient energy to pick up a case of 12 oz. soft drinks or pick up a bowling ball. This requires an approximate grip strength of 45-60 pounds on a hand dynamometer."
5. Prior to her employment at Sam's Club, the plaintiff was a cashier/stocker for Winn-Dixie beginning in either 1994 or 1995, through December 31, 1999. After gaining employment at Sam's Club, the plaintiff continued working on an as-needed basis for Winn-Dixie.
6. The plaintiff has a significant medical history, including a history of ulnar nerve compression in her left elbow and lateral epicondylitis. A nerve release was performed in April 1993, by Dr. John Gaul (hereinafter "Dr. Gaul"), Charlotte Orthopaedic Specialists. The plaintiff also experienced problems with her hands while under the treatment of Dr. Gaul. The plaintiff testified that when she left the care of Dr. Gaul, her hands were without pain and she had no pain in her hands thereafter until employed by Sam's Club.
7. Dr. Sivalingam Siva (hereinafter "Dr. Siva"), The Neurological Center, treated the plaintiff in May 1998, for pain in her low back radiating into her left leg as a result of an accident. The plaintiff also complained of right arm pain. A nerve conduction study performed June 5, 1998, showed evidence of slowing of the ulnar nerve. Dr. Siva noted on July 31, 1998, that the plaintiff had significant loss of use in both hands due to continued problems. Dr. Siva performed surgery on the right ulnar nerve in August 1998. The plaintiff was released from his care on September 23, 1998.
8. The plaintiff began experiencing pain in both hands in the latter part of November 1999, shortly after her employment at Sam's Club. Her symptoms included swelling, numbness, soreness, and tingling. She experienced problems with lifting and holding items. The symptoms first started in her left hand and soon thereafter appeared in her right hand. The symptoms became worse and the plaintiff reported the symptoms to her supervisor.
9. The plaintiff sought treatment from Dr. Robert Humble (hereinafter "Humble") on December 22, 1999. Dr. Humble noted that the plaintiff reported a past history of carpal tunnel syndrome and that it had flared up. The plaintiff reported previously receiving injections in her hand that had given her some relief and she was requesting injections again.
10. Dr. Humble documented "very significant Tinel's and very positive Phalens." The plaintiff was conservatively treated with injections and splints. The injections provided only temporary relief. Based on these findings and the plaintiff's history, CTS surgery was recommended. A left carpal tunnel release was completed on February 4, 2000, and a right carpal tunnel release on April 24, 2000.
11. The plaintiff was treated through February 6, 2001, and released. Dr. Humble assigned a ten percent permanent impairment rating to each hand.
12. The plaintiff left employment at Sam's Club on or about December 21, 1999, but continued to work for Winn-Dixie until December 31, 1999. During these dates, the plaintiff would have actually worked part-time three or four days.
13. Dr. Humble's testimony clearly establishes that the plaintiff's brief employment at Sam's Club did cause her bilateral CTS.
14. Dr. Humble's pertinent opinions are:
a. The plaintiff's employment at Sam's Club, based on the plaintiff's history and lack of any previous documented CTS, "definitely" precipitated or caused her CTS symptoms to occur;
b. Mr. Gorrod's EJA does not alter his opinion as to causation of aggravation;
c. The plaintiff probably had underlying CTS that was asymptomatic prior to her employment at Sam's Club; and
d. Based on the Sam's Club job description, the plaintiff's employment at Sam's Club exposed her to a higher risk of contracting CTS as compared to the public.
15. In Dr. Humble's opinion, the plaintiff's continued employment at Winn-Dixie beyond December 21, 1999, would not have aggravated her underlying CTS because she would have worked only three or four days.
16. The evidence establishes that the plaintiff had worked at Winn-Dixie for a number of years without symptoms of CTS and she demonstrated symptoms shortly after undertaking her job duties at Sam's Club.
17. Dr. Humble's testimony is accepted as credible and establishes that the plaintiff's employment at Sam's Club aggravated her preexisting CTS. His testimony establishes that the plaintiff's employment at Sam's Club exposed the plaintiff to a greater risk of aggravating her CTS than the general public. Dr. Humble's testimony also establishes that the aggravation of the plaintiff's CTS occurred as a result of her employment at Sam's Club to the exclusion of Winn-Dixie. Finally, Dr. Humble's testimony, supported by that of the plaintiff, is convincing that the plaintiff was last injuriously exposed at Sam's Club and that the three or four days of continued employment at Winn-Dixie, that had not previously evoked any CTS symptoms, did not result in further injury.
18. The plaintiff's testimony is accepted as credible. Her assertions were not exaggerated and other record evidence buttressed most of her testimony. When uncertain of dates or other facts, the plaintiff readily conceded her lack of knowledge. Her work record is excellent.
19. Al Gorrod's opinions are given little weight for the reasons stated in Conclusion of Law 11.
 ***********
The forgoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proving every element of compensability of her workers' compensation claim. Gibbs v.Leggett and Platt, Inc., 112 N.C. App. 103, 434 S.E.2d 653, (1993) (citation omitted). The degree of proof required is the greater weight or preponderance of the evidence. Phillips v. U.S.Air, Inc., 120 N.C. App. 538,463 S.E.2d 259 (1995), aff'd,343 N.C. 302,469 S.E.2d 552 (1996).
2. To establish a right to workers compensation benefits for an occupational disease under N.C. Gen. Stat. § 97-53(13), the plaintiff must prove by the greater weight of the evidence that:
a. her CTS is characteristic of individuals engaged in the particular trade or occupation in which she was engaged at Sam's Club;
b. that CTS is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and
c. there is a causal relationship between the disease and the plaintiff's employment.
Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). The third element of the test is satisfied if the employment "significantly contributed to, or was a significant causal factor in, the disease's development." Rutledge, 308 N.C. at 101,301 S.E.2d at 369-70. For the employment to constitute a "significant contributing factor." The plaintiff must prove by the greater weight of the evidence that absent the employment the occupational disease "would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." Baker v. City of Sanford, 120 N.C. App. 783, 788,463 S.E.2d 559, 563 (1995) (citation omitted), disc. review denied,342 N.C. 651, 467 S.E.2d 703 (1996).
3. The plaintiff has proven by the greater weight of the evidence that her work at Sam's Club exposed her to a greater risk of developing CTS than the general public. Proof of increased risk satisfies the first two elements of the Rutledge
test. Rutledge v. Tultex Corp/Kings Yarn, 308 N.C. at 93-94,301 S.E.2d at 365; Pressley v. Southwestern Freight Lines, N.C. App. S.E.2d (2000) (The term "general public" is defined as pertaining to the general public of North Carolina.); Minter v. Osborne Co.,127 N.C. App. 134, 487 S.E.2d 835, disc. review denied,347 N.C. 401, 494 S.E.2d 415 (1997) (statute employs an "increased risk" test and not a positional, or "but for," analysis).
4. The plaintiff has proven by the greater weight of the evidence that she sustained an aggravation of preexisting CTS as a result of her brief employment at Sam's Club. Baker v. City ofSanford, 120 N.C. App. at 788, 463 S.E.2d at 563, disc. reviewdenied, 342 N.C. 65 1, 467 S.E.2d 703 (1996); Click v. PilotFreight Carriers, Inc., 3 00 N.C. 164, 265 S.E.2d 3 89 (1980) (complicated medical issues require expert testimony).
5. The plaintiff has proven by the greater weight of the evidence that her CTS was aggravated to such a degree that she was required to seek medical treatment. Her employment at Sam's Club is, therefore, "an exposure which proximately augment[s] the disease to any extent, however slight." Rutledge v. Tultex Corp.,308 N.C. at 89, 301 S.E.2d at 362, even though the plaintiff has not proven that her brief employment at Sam's Club caused her CTS. Compare Caulder v. Waverly Mills, 314 N.C. 70,331 S.E.2d 646 (1985) with Anderson v. Gulistan Carpet, ___ N.C. App. ___, ___ S.E.2d ___ (2001).
6. The parties have stipulated that the plaintiff sustained a temporary total loss of wages from December 22, 1999, until February 6, 2001, when certified at maximum medical improvement by Dr. Humble. N.C. Gen. Stat. § 97-29.
7. The plaintiff has proven by the undisputed evidence that she retains a permanent partial disability of ten percent to each hand. N.C. Gen. Stat. § 97-3 1.
8. The plaintiff's average weekly wage has been stipulated by the parties as $289.00, yielding a stipulated weekly compensation rate of $186.68. N.C. Gen. Stat. § 97-2.
9. The plaintiff has proven by the greater weight of the evidence that medical treatment related to her CTS was reasonable and medically necessary to affect a cure, provide relief or lessen disability. N.C. Gen. Stat. § 97-25.
10. Legal counsel for the plaintiff has provided valuable legal services and a reasonable attorney fee is 25 percent of the payments' awarded to the plaintiff. N.C. Gen. Stat. § 97-90.
11. Mr. Gorrod is certified in ergonomic evaluations by RMA Associates, a training and education organization. Certification requires 15 to 20 courses over three to five years, primarily at the University of Michigan School of Ergonomics and Industrial Safety, completion of 500 hours of field casework and two specialized field case studies. Mr. Gorrod has served as a consultant to business entities and has conducted over 3,000 evaluations. Mr. Gorrod has testified in over 300 cases before the North Carolina Industrial Commission. In the vast majority, if not all, of these evaluations and cases, Mr. Gorrod has worked for and testified on behalf of employers.
Pursuant to Rule 702(a) of the North Carolina Rules of Evidence, "a witness qualified as an expert by knowledge, skill, training, or education may testify concerning scientific, technical, or other specialized knowledge." Mr. Gorrod has no undergraduate or graduate degree in ergonomics or medicine and no degree in engineering or biomechanics. He is not certified nationally as a certified professional ergonomist and is not recognized by any North Carolina certification as an ergonomist.
The fact that Mr. Gorrod has been hired as a "consultant' numerous times by employers to give predictable, employer-friendly "analysis" and testimony does not imbue Mr. Gorrod with knowledge. Mr. Gorrod's single "certification" requires just a few courses every year. Furthermore, Mr. Gorrod has no medical training and is not qualified to proffer medical opinions because he does not have "knowledge, skill, experience, training, or education" in medical matters.
The North Carolina Supreme Court in State v. Goode,341 N.C. at 513, 461 S.E.2d at 631 and State v. Pennington, 327 N.C. 89,393 S.E.2d 847 (1990) outlined the essential factors in determining whether any scientific test or methodology is of such reliability to be admissible into evidence. These factors are:
1. The expert's use of established techniques;
2. The expert's professional background in the field;
3. Any independent research conducted by the expert; and
4. Whether there has been a general acceptance of an expert's methodology in the relevant scientific field.
The ultimate question is whether or not the proffered evidence is sufficiently reliable. N.C. Gen. Stat. § 8C-1, Rule 702(a);Taylor v. Abernethy, ___ N.C. App. ___, 560 S.E.2d 233 (2002). Mr. Gorrod measures ergonomic "stressors" in the plaintiff's ergonomic job analysis (EJA) using his homemade "rating scale." His EJA methodology is not an established technique and has not undergone peer evaluation or review. The accuracy or relevance of Mr. Gorrod's dubious methodology as reflected in his EJA has not been established or tested by those legitimately in the field of ergonomics. Mr. Gorrod testified that his experience has resulted in the actual use of only three numbers from the scale; two, five and eight. Mr. Gorrod's so-called rating scale, of which he actually uses less than a third, has not been subjected to peer review or evaluation of its accuracy, is not an established technique, and is not a methodology generally accepted in the relevant scientific field.
Mr. Gorrod's curriculum vita states that he has published six articles. These articles, however, were merely papers prepared either for seminars or for class. None of these papers were published in a peer review or a scientific periodical. Mr. Gorrod is not a member of any professional association pertaining to ergonomics. A national licensing association exists for ergonomic experts, but Mr. Gorrod has not submitted himself for examination, although he testified that he would in the future.
In the case at hand, Mr. Gorrod observed other employees performing the cashier's job at Sam's Club for approximately two hours. Mr. Gorrod did not observe the plaintiff performing the cashier's job. Before forming his opinions, Mr. Gorrod did not review Sam Club's job description for the plaintiff's position entitled "Sam's Club Job Matrix." The job description prepared by Sam's Club contained several physical requirements more strenuous than those actually considered by Mr. Gorrod.
Mr. Gorrod does not use established techniques, has a very modest professional background in the field of ergonomics, has conducted no peer-reviewed independent research, and does not use accepted methodology.
However, there are some prior appellate decisions that have recognized Al Gorrod as an expert in the filed of ergonomic evaluations. Therefore, the Full Commission finds that Al Gorrod is an expert in ergonomic evaluations but accords little weight to his testimony.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Sam's Club shall pay the-plaintiff temporary total disability benefits from December 22, 1999, until February 6, 2001, at the weekly compensation rate of $186.68. This liquidated amount shall be paid in one lump sum, subject to a reasonable attorney's fee as awarded supra.
2. Sam's Club shall pay the plaintiff permanent partial disability benefits at the rating of ten percent to each hand at the compensation rate of $186.68, which entities her to $3,733.60, to be paid in a lump sum, subject to attorney's fee provided supra.
3. Sam's Club shall pay all medical expenses incurred or that may be reasonably necessary related to the plaintiff's bilateral CTS to effect a cure, give relief or tend to lessen the plaintiff's disability.
4. The plaintiff shall pay a reasonable attorney's fees in the amount of 25 percent of temporary total disability and permanent partial disability benefits pursuant to this Award. Sam's Club shall deduct the attorney fee approved from the sum awarded the plaintiff and pay the amount directly to the plaintiff's counsel.
5. Defendant shall pay the costs of this action.
 S/____________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION
 S/_______________ DIANNE C. SELLERS COMMISSIONER