***********
The undersigned have reviewed the prior Opinion Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion Award of Deputy Commissioner Taylor as follows:
 ***********
The parties stipulated as to the following:
 ISSUES
1. Did plaintiff contract a compensable occupational disease in the course and scope of employment with Defendant?
2. To what, if any, benefits is plaintiff entitled? *Page 2 
3. What health problems have resulted from plaintiff's allegedly compensable occupational disease?
4. Is plaintiff permanently and totally disabled from competitive employment?
5. Prior to denial, did defendants fail to conduct "a reasonable investigation based upon all available information" according to N.C. Gen. Stat. § 58-63-15?
6. What sanctions and penalties should be assessed against defendants?
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Employer-Defendant.
3. Liberty Mutual Insurance Company was the carrier on the risk for Employer-Defendant from 1999 to present.
4. Employee-Plaintiff's medical records are submitted as part of Stipulated Exhibit 1.
5. All Industrial Commission forms and filings are submitted as part of Stipulated Exhibit 1.
6. The average weekly wage is subject to the Form 22.
 *********** EVIDENCE *Page 3 
Employee-Plaintiff's Exhibits 1, 2 and 4 were received into evidence. Defendants' Exhibits 1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17A and 18 were received into evidence. Stipulated Exhibit 1 including medical records, I.C. Forms and certain MSA sheets was stipulated into evidence.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, Plaintiff was a 52 year old male with a ninth grade education. Plaintiff was employed by Defendant as a tuber operator from May 20, 1974 through June 28, 2006. Plaintiff's position included receiving completed tubes from the manufacturing process and inspecting the same for defects. Plaintiff claimed he was exposed to numerous fumes and chemicals during his employment that caused respiratory problems amounting to an occupational disease.
2. During the time Plaintiff worked on the Tuber, smoke, vapors, emissions, and other by-products caused the area to have air quality issues. This was especially true after the plant began production of the Apex product.
3. Plaintiff was encouraged to run the line as rapidly as possible in order to maintain high production. When doing so, the temperature in the area would be very hot and the smoke, vapors, emissions and by-products would be greater with the increased production.
4. Luther Oxendine, Allen Phillips and Benny Benton were members of management that were aware of issues with air quality in the area where Plaintiff worked. David Nelson, Kemice Locklear, J. W. McDowell, Scott Giddings and Robert Jackson, co-workers of *Page 4 
Plaintiff, also observed and smelled the smoke, vapors, fumes, emissions, and by-products in the air near Plaintiff's machine.
5. Plaintiff complained of increased air quality issues to his supervisors, Cecil Taylor, Allen Phillips and Luther Oxendine. He complained about exposure to Resorcinol because of crystals that formed on the machinery and other objects in his work area. He also was concerned that the production line conveyer belt was discolored with a pink color which to him also indicated Resorcinol release.
6. During his employment, Plaintiff was medically monitored, and pulmonary function testing on December 14, 2004, showed no pulmonary impairment. S.E.R. and S.M.R. pulmonary function testing on January 13, 2006, also showed no pulmonary impairment.
7. Plaintiff had a history of asthma-like symptoms. The earliest available medical records show respiratory issues from at least 1990. In September 2001, Plaintiff was diagnosed with reactive airways disease with wheezing. Plaintiff noted a history of these symptoms and problems with changes in weather. Plaintiff presented on November 16, 2001, with an exacerbation of asthma, and was prescribed Advair. Advair was not very effective for control of his asthma so he was switched to Singulair. By April 2, 2002, his asthma was under control. Plaintiff noted an exacerbation of his asthma on February 11, 2003 and October 6, 2003. Beginning on December 7, 2004, Plaintiff reported some issues with bronchitis to Dr. Kommu.
8. Plaintiff self-reported to Dr. Wayne Whetsell at LaFayette Clinic, P.A., on December 14, 2004, that he had a 20 year history of bronchial asthma. Plaintiff noted that from time to time he had acute aggravation of this condition and related some exacerbation of his symptoms at work. Dr. Whetsell diagnosed Plaintiff with a history of bronchial asthma which was mild and intermittent, but with no evidence of significant pulmonary impairment. *Page 5 
Dr. Whetsell did not think Plaintiff's asthma was exacerbated enough to remove him from his work environment.
9. In May 2005, Plaintiff reported to Dr. Kommu that his asthma was stable. Plaintiff presented on November 7, 2005, with a flare-up in asthma which he did not relate to any particular cause. On December 20, 2005, Plaintiff was diagnosed with asthmatic bronchitis and allergic rhinitis. Plaintiff's medications were changed, and he was given a breathing treatment. On January 6, 2006, Dr. Kommu noted Plaintiff had a history of asthma, which lately had flared, causing him to treat in the emergency room. He was referred for a pulmonary evaluation.
10. Plaintiff returned to Dr. Whetsell on January 13, 2006 and was diagnosed with recurrent wheeze syndrome secondary to bronchial asthma by history and possible fume and dust exposure at work.
11. Plaintiff also reported to Heritage Family Physicians that he had a history of asthma, which he felt was aggravated by his work. On April 27, 2006, Dr. Kommu indicated he could not write Plaintiff out of work because his expertise did not cover environmental medicine. Plaintiff returned on May 15, 2006, and again requested an out of work note. However, his physician did not believe his opinion related to disability would be sufficient and again recommended Plaintiff consult another physician for an opinion.
12. Dr. Darcey, an expert in occupational and environmental medicine, evaluated Plaintiff on numerous occasions, including on March 10, 2006, and stated he had chemical bronchitis, which had become an asthma-like condition. Dr. Darcey specifically testified "It seemed like a reasonable story for an exacerbation of a preexisting asthma-like condition, which was made worse by exposure to chemicals and irritants in the workplace." Plaintiff's asthma improved while away from the workplace, although he still had some episodes of shortness of breath. *Page 6 
13. Dr. Darcey reasoned that Plaintiff's prior respiratory symptoms and continuation of the symptoms despite his removal from the work environment were due to the fact that "he had preexisting disease and some mild asthma," indicating the underlying asthma condition was not a risk inherent to his workplace, but rather was exacerbated by his work.
14. Dr. Darcey was of the opinion that Plaintiff's pre-existing asthma was temporarily exacerbated by his work-related exposure.
15. By February 14, 2007, Dr. Darcey noted that Plaintiff "had very significant improvement with very rare episodes of shortness of breath, occasionally with physical exertion and exposure to hot humid air." He also noted Plaintiff no longer required Advair, and was rarely using his rescue inhaler. Dr. Darcey was of the opinion Plaintiff could return to work so long as he was in "an area where [he] was protected." Dr. Darcey was of the opinion that by February 14, 2007, Plaintiff:
 had preexisting disease and mild asthma . . . he had kind of evolved back into a sort of a maximum medical improvement and stabilized, and he was on the medication level that he started with essentially. So, my assessment of this was he was back to his baseline; and he was on, you know, medication that he would need anyway chronically.
Dr. Darcey, throughout his testimony, reinforced that Plaintiff had returned to baseline, and was at the same medication level as prior to the November 2005 exacerbation. Dr. Darcey further indicated that even if Plaintiff had, hypothetically, super-normal numbers on pulmonary function testing; it would not change the impairment rating. Though Dr. Darcey indicated Plaintiff has a 10% impairment rating, this rating is reflective of Plaintiff's pre-existing baseline and is not a result of Plaintiff's time limited exacerbation which did not result in any permanent worsening of his condition. *Page 7 
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-53(13) provides that a Plaintiff seeking compensation for an occupational disease must establish that his disease or condition meets the following three criteria:
 a. The condition is characteristic of persons engaged in the particular trade or occupation in which the Plaintiff is engaged;
 b. The condition is not an ordinary disease of life to which the general public is equally exposed outside of those engaged in that particular trade or occupation; and
 c. There is a causal connection between the disease and the claimant's employment.
The employee seeking workers' compensation benefits bears the burden of proving every element of compensability. Gibbs v. Legget andPlatt, Inc., 112 N.C. App. 103, 107,434 S.E.2d 653, 656 (1993).
The three pronged test, which outlines the requirements of N.C. Gen. Stat. § 97-53(13), is often looked at in two parts pursuant to Rutledge v. Tultex,308 N.C. 85; 301 S.E.2d 359 (1983):
 a. Whether the employee's job exposed him to a greater risk of contracting the disease than those members of the general public not so employed; and
 b. Whether his exposure significantly contributed to or was a causal factor in the disease's development. *Page 8 
2. Plaintiff has an evidentiary burden to "establish that his employment exposed him to a greater risk of contracting his disease relative to the general public." Chambers v. TransitManagement, 360 N.C. 609, 612, 636 S.E.2d 553, 555 (2006). The Court has interpreted N.C. Gen. Stat. § 97-53(13) and the relevant case law to require sufficient medical evidence to distinguish between the risk faced by the Plaintiff of contracting his conditions and the risk of aggravating a pre-existing condition relative to the general public.
3. Based on the testimony of Dr. Darcey, Plaintiff has failed to meet his burden under Chambers or Rutledge to show his employment put him at an increased risk of developing asthma, rather than just exacerbating symptoms of his preexisting asthma. Without medical testimony to prove the first two elements of theRutledge test, Plaintiff cannot meet his burden and his claim cannot be found compensable under existing precedent.
4. Chambers required that a Plaintiff seeking to prove an occupational disease show the employment placed him a greater risk for contracting the disease, even if the condition is aggravated but not caused by the Plaintiff's employment. Therefore, a mere increased risk for aggravation of a preexisting illness is insufficient.
5. Plaintiff has also failed to provide medical testimony of causation, other than possible aggravation of his pre-existing asthma. Dr. Darcey testified:
 They (sic) way I would put this case together is that this individual, who had some preexisting asthma, worked in an environment where he was exposed, over many years, to potentially chemical irritants by — again, by his report — potentially sensitizers. He gets into a situation where apparently now things have changed a little bit where his now (Sic) exposures have worsened, and as a result of that he develops this bronchitis and asthma, and has trouble for a period of time until he's removed from the exposure, at which time he then recovers, and essentially arrives back at the baseline. So, the exacerbation, starting in November `05 and lasting through my last visit, I would attribute to an exacerbation due to work exposures. *Page 9 
6. Dr. Darcey thought that the workplace exacerbated Plaintiff's preexisting asthma, but never testified that Plaintiff's work was the cause of his underlying disease. Simply stating that employment could be causative or aggravating is not sufficient to meet the Plaintiff's burden under Chambers. As noted in Holley v.ACTS, Inc., a "mere possibility has never been legally competent to prove causation."357 N.C. 228, 581 S.E. 2d 750, 754 (2003) (citations omitted.) Since Plaintiff cannot provide any medical or other testimony to causation other than exacerbation, this is insufficient to meet his burden under Chambers and Rutledge and his claim must be denied.
7. Plaintiff has failed to prove by the greater weight that his work was the cause, or that he was at an increased risk for developing respiratory disease, relative to the general public, as required by Chambers and Rutledge.
8. In Thompson v. Burlington Industries, the North Carolina Court of Appeals held that despite exacerbation of Plaintiff's asthma at her employment, she did not retain any permanent functional pulmonary impairment as a result of her employment, nor did she incur any compensable disability attributable thereto. According to the court, "since Plaintiff suffered from asthma, an ordinary disease of life, and did not retain any permanent functional pulmonary impairment after she quit her job, she did not have an occupational disease."59 N.C. App. 539, 542, 297 S.E.2d 122, 124 (1982).
9. Plaintiff has failed to prove by the greater weight that he suffered permanent impairment due to his employment with the Defendant.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 10 
 ORDER
1. Plaintiff's claim for occupational asthma must be, and the same is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of September, 2009.
 S/_______________________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________________________ DIANNE C. SELLERS COMMISSIONER
 S/_______________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER