WILLIAM A. BAKER, Employee/Plaintiff v. CITY OF SANFORD, Employer; SELF-INSURED (HEWITT, COLEMAN & ASSOCIATED, AGENT), Defendant

No. COA94-1455

(Filed 21 November 1995)

1. **Workers' Compensation § 208 (NCI4th)— work-related depression—occupational disease—failure of Commission to apply significant contributing factor standard**

Where the Industrial Commission found as fact that plaintiff suffered from work-related depression and concluded as a matter of law that this depression was an occupational disease, the Commission erred in concluding that plaintiff's severe, disabling depression arose from his brother's death and was not a direct and natural result of his occupational disease without first determining that, but for the occupational disease, the depression would not have developed to the point of disability.

### 2. Workers' Compensation § 213 (NCI4th)— disabling depression—death of plaintiff's brother not intervening cause

The Industrial Commission erred in characterizing plaintiff's disabling depression as the result of "an intervening event"—his brother's death, since the application of an intervening cause standard in Workers' Compensation cases has been limited to consideration of those intervening events that are the result of a claimant's own intentional conduct, and in this case the death of plaintiff's brother was not attributable to plaintiff's own intentional conduct.

Appeal by plaintiff appellant from Opinion and Award entered 27 June 1994 by the Full Industrial Commission. Heard in the Court of Appeals 4 October 1995.

Plaintiff was employed by defendant Sanford Police Department as a detective sergeant from 1981 until 16 February 1990, and was the lead investigator for all major crimes, including homicide cases. Plaintiff testified that one particular homicide trial in 1989, which he investigated and in which he had to testify, caused him fear and stress.

On 10 October 1989 he told his doctor, Dr. Peter Clemens, a family practitioner, that he was having many job stresses related to this trial, and Dr. Clemens testified that he suffered from an acute anxiety attack with "some definite depressive features as well." Plaintiff testified that he spent most of his time in late 1989 at home and at work alone in locked rooms with the lights out. Dr. Clemens also testified that plaintiff reported this behavior to him. Plaintiff's supervisor testified that although he did not remember this specific behavior in the fall of 1989, plaintiff "was acting very strange."

In the fall of 1989 Dr. Clemens diagnosed plaintiff with agitated depression "related to his job and to his stresses at work," and scheduled an appointment with a clinical psychologist. He testified that "depression is something that builds over a long time," and that in the fall of 1989 "things reached a blowing point . . . . I don't think that that one trial alone caused him to be depressed. I think this was something that took a number of years." He testified that plaintiff's work stress was a significant factor in his development of depression. Dr. Clemens further testified that plaintiff's depression in the fall of 1989 was different from "situational depression," which is caused by a

traumatic experience and which, in most healthy people, lifts after a grieving period.

Plaintiff's wife testified that in late 1989 plaintiff became withdrawn and wanted to be left alone. She testified that in January 1990 he attempted suicide because, although he loved his job, he had a lot invested in it, and it was "getting to him." On 15 February 1990, Dr. Clemens saw plaintiff again, and he assessed plaintiff's anxiety and depression as "stable." However, he did not testify to the medical definition of this assessment.

On 17 February 1990, plaintiff's brother was found dead, and plaintiff believed he had been murdered, although no murder investigation occurred. Plaintiff did not return to work after his brother's death, and in March 1990 he was hospitalized with depression at Holly Hill Hospital until June 1990 when he was transferred to Cumberland Hospital until 23 July 1990. Dr. Antonio Cusi treated plaintiff at Cumberland and testified by deposition that he diagnosed plaintiff with "major depression, severe, recurrent, with some psychotic features." He defined "major depression" as a disease that "is not just brought about by a situation, but is also related to a possible chemical imbalance coupled with physical and psychological components." He testified further that major depression "takes awhile" to develop, is "ongoing and chronic," and is "not an overnight phenomenon."

Dr. Cusi further testified that although plaintiff's brother's death was one major contributing factor in his depression, "work stressors" also contributed to his condition. He identified the death of plaintiff's brother as "the last straw that broke the camel's back," and he described it as "just the end of a process that has already begun even before his brother's death. That he was already having a lot of difficulties, and that his brother's death just brought it to a head where he needed to be hospitalized." He also testified that it would be difficult to quantify the factors that brought about his depression. After plaintiff's discharge from Cumberland Dr. Cusi continued to see him on an outpatient basis until 11 February 1991, at which time his diagnosis was the same as his initial one.

Because his depression left him unable to work, plaintiff filed for disability benefits with the Commission. On 8 May 1992, Deputy Commissioner Edward Garner, Jr., filed an Opinion and Award, concluding that plaintiff suffered depression as an occupational disease,

BAKER v. CITY OF SANFORD

[120 N.C. App. 783 (1995)]

that his work exposure significantly contributed to or was a significant causal factor in the disease's development, and that he was totally and permanently disabled, within the meaning of N.C. Gen. Stat. § 97-29.

Defendants appealed to the Full Industrial Commission (the Commission), and the Commission reversed by majority opinion on 27 June 1994, denying plaintiff's claim. The Commission's findings of fact, in pertinent part were:

12. As of October 1989 plaintiff was experiencing symptoms of anxiety and depression which were related in significant part to the stress associated with his job with defendant. He was placed at an increased risk of developing depression by virtue of his job duties as a detective with defendant's police department. However, there were multiple other factors involved, including endogenous changes within his brain. Nevertheless his condition improved with minimal treatment by February 15, 1990 when it was considered stable. Throughout that time his work related depression did not cause him to be unable to work.

13. Following his brother's death on February 17, 1990, plaintiff developed severe, disabling depression which required inpatient treatment. The death of his brother was an intervening event which was unrelated to his employment. The severe depression developed as a result of this intervening event and was not shown to have been a direct and natural result of his work related depression. Consequently, the disability he suffered as a result of this severe depression arose from his brother's death.

The Commission concluded that as of October 1989 plaintiff had developed depression as an occupational disease, but that it was not disabling and thus noncompensable. The Commission further concluded that the death of plaintiff's brother was an "intervening event," and plaintiff's subsequent depression arose from that event and was "not a direct and natural result of his occupational disease." Commissioner J. Randolph Ward filed a dissenting opinion.

*Van Camp, West, Hayes & Meacham, P.A., by Stanley W. West, for plaintiff appellant.*

*Maupin Taylor Ellis & Adams, P.A., by Jack S. Holmes and Julie A. Alagna, for defendant appellee City of Sanford.*

ARNOLD, Chief Judge.

Plaintiff's first three arguments on appeal address the issue of causation, assigning as error the Commission's finding of fact that plaintiff's disability was not the direct and natural result of his work-related depression, and its conclusions of law that (1) his depression arose from an intervening event and (2) his occupational disease was not disabling.

[1]   In determining complex causation in workers' compensation cases, "the Commission may, of course, consider medical testimony, but its consideration is not limited to such testimony." *Rutledge v. Cultex Corp.*, 308 N.C. 85, 105, 301 S.E.2d 359, 372 (1983). The Commission "is not limited to the consideration of expert medical testimony in cases involving complex medical issues," *Harvey v. Raleigh Police Dept.*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, *disc. review denied*, 325 N.C. 706, 388 S.E.2d 454 (1989); *contra Click v. Freight Carriers*, 300 N.C. 164, 168, 265 S.E.2d 389, 391 (1980), and the Commission need not "find in accordance with plaintiff's expert medical testimony if the defendant does not offer expert medical testimony to the contrary." *Harvey*, 96 N.C. App. at 34, 384 S.E.2d at 552.

However, the Commission must still base its findings of fact on competent evidence. *See Click*, 300 N.C. at 166, 265 S.E.2d at 390. It is settled that if there is any competent evidence to support the Commission's findings, this Court is "not at liberty to reweigh the evidence and to set aside the findings . . . simply because other . . . conclusions might have been reached." *Rewis v. Insurance Co.*, 226 N.C. 325, 330, 38 S.E.2d 97, 100 (1946). "This is so, notwithstanding the evidence upon the entire record might support a contrary finding." *Vause v. Equipment Co.*, 233 N.C. 88, 93, 63 S.E.2d 173, 177 (1951).

The standard for identifying occupational diseases under the Workers' Compensation Act was set out in *Rutledge*. For a disease to be occupational under N.C. Gen. Stat. § 97-53(13), it must be:

> (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

*Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365. The Commission found as fact that plaintiff suffered from work-related depression and con-

cluded as a matter of law that this depression was an occupational disease in October 1989. *See, e.g., Harvey v. Raleigh Police Dept.*, 85 N.C. App. 540, 355 S.E.2d 147, *disc. review denied*, 320 N.C. 631, 360 S.E.2d 86 (1987) (recognizing depression as an occupational disease of police officers under the Workers' Compensation Act). However, the Commission concluded that plaintiff's occupational disease was not compensable because it did not result in disability.

This conclusion does not account for the possibility that the occupational disease simply developed into a disabling, compensable disease due to aggravation by the death of plaintiff's brother. In the context of occupational diseases, the proper factual inquiry for determining causation is

> whether the occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work.

*Rutledge*, 308 N.C. at 102, 301 S.E.2d at 370. In *Rutledge*, the Supreme Court adopted the principle that

> it was not necessary that the work-related injury be the sole cause of the worker's incapacity for work but that full benefits would be allowed when it is shown that "the employment is a contributing factor to the disability."

*Id.* at 104, 301 S.E.2d at 371 (quoting *Bergmann v. L. & W. Drywall*, 222 Va. 30, 32, 278 S.E.2d 801, 803 (1981)). Under this significant contributing factor standard, therefore, the Commission should have determined, by examining competent evidence, whether *but for* the occupational disease, the depression would not have developed to the point of disability. The Commission failed to apply this causation standard and did not consider that the occupational disease may have been a significant contributing factor in plaintiff's disability. Instead, the Commission's conclusion that plaintiff's severe, disabling depression arose from an intervening event and was not a direct and natural result of his occupational disease indicates that the Commission found that plaintiff suffered from two separate and distinct depressions. We find no competent evidence, however, that the occupational depression, and the depression after the death of plaintiff's brother, were separate and distinct diseases.

In denying relief, the Commission failed to find that plaintiff's "occupation was not a significant causal factor in the development of

BAKER v. CITY OF SANFORD

[120 N.C. App. 783 (1995)]

his [disease]. Therefore, the Commission failed to find the absence of the third element set out in *Rutledge.*" *Harvey v. Raleigh Police Dept.*, 85 N.C. App. 540, 544, 355 S.E.2d 147, 150, *disc. review denied,* 320 N.C. 631, 360 S.E.2d 86 (1987). We find that the Commission erred in making this conclusion as to causation without applying the *Rutledge* significant contributing factor analysis, and we remand for determination under the correct standard.

[2] In his second assignment of error plaintiff argues that the Commission erred in concluding that his disabling depression arose from an intervening event. The Commission found that plaintiff's severe, disabling depression following his brother's death was non-compensable because it was "not a direct and natural result of his occupational disease." The Commission arrived at this conclusion by characterizing plaintiff's disabling depression as the result of "an intervening event"—his brother's death. We find no support for this analysis.

In the context of the Workers' Compensation Act, an "intervening cause" is "an occurrence 'entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result.' " *Heatherly v. Montgomery Components, Inc.*, 71 N.C. App. 377, 380, 323 S.E.2d 29, 30 (1984) (quoting *Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E.2d 321 (1970)), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985); *see Horne v. Universal Leaf Tobacco Processors*, 119 N.C. App. 682, 459 S.E.2d 797 (1995). The application of an intervening cause standard has been limited to consideration of those intervening events that are the result of a claimant's own intentional conduct.

Specifically, an intervening event has been held to defeat recovery under the Workers' Compensation Act only if it is "attributable to claimant's own intentional conduct." *Weaver v. Swedish Imports Maintenance, Inc.*, 80 N.C. App. 432, 435, 343 S.E.2d 205, 207 (1986) (citing *Starr v. Charlotte Paper Co.*, 8 N.C. App. 604, 611, 175 S.E.2d 342, 347 (1970)), *rev'd in part on other grounds*, 319 N.C. 243, 354 S.E.2d 477 (1987); *see also Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 308 S.E.2d 485 (1983), *disc. review denied*, 310 N.C. 309, 312 S.E.2d 652 (1984); 1 Larson, *Workmen's Compensation Law* § 13.00 at 3-502 (1995). In this case, the death of plaintiff's brother was not attributable to plaintiff's own intentional conduct, and the Commission's analysis and denial of recovery based on the characterization of that event as "intervening" was erroneous.

Finally, plaintiff assigns as error the Commission's denial of his motion to reopen the record to take additional expert medical testimony. The standard under Rule 701(7) of the Rules of the Industrial Commission is the same as the standard for the admissibility of newly discovered evidence. Under that standard, newly discovered evidence must be, among other things, newly discovered, not merely cumulative, and significant enough that a different result would be reached. *State v. Britt*, 320 N.C. 705, 712-13, 360 S.E.2d 660, 664 (1987). Because we find that the evidence plaintiff wishes to present does not meet the admissibility requirements of newly discovered evidence, we affirm the Commission's decision to deny plaintiff's motion to take additional evidence.

Reversed in part and remanded for determination in accordance with the standards set out above.

Reversed in part and remanded.

Judges GREENE and SMITH concur.