* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 6 August 2002 and on 1 October 2003, plaintiff was an employee of defendant-employer.
2. On 6 August 2002 and on 1 October 2003, the parties were subject to the North Carolina Workers' Compensation Act.
3. Defendant-employer shall submit a properly completed Form 22 and submit the same to plaintiff's counsel on or before 15 May 2005.
4. On 6 August 2002, plaintiff suffered an injury by accident while in the course and scope of her employment with defendant-employer, when the elevator in which she was riding malfunctioned.
5. On 7 August 2002, defendant-employer filed a Form 19, notifying the North Carolina Industrial Commission of plaintiff's injury which had occurred on 6 August 2002. Thereafter, defendant-employer has paid or caused to be paid for medical expenses pertaining to treatment of the injuries suffered by plaintiff arising from said injury, by the following medical providers: Durham Regional Hospital, Triangle Orthopaedic Associates, Dr. Timothy Stroupe and Dr. Robert Winton.
6. Plaintiff is not currently receiving any temporary total disability benefits from defendants.
7. The issues for determination are:
 a. Whether plaintiff is disabled as a result of injuries sustained in the accidents that occurred on 6 August 2002?
 b. If so, to what benefits is plaintiff entitled under the Act?
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 57 years old. She has completed the 10th grade.
2. Plaintiff began working for defendant-employer on 19 September 1990, as a mail clerk. Her duties included posting of mail and delivery of papers and mail to offices throughout the 16 floors of defendant-employer's building. Plaintiff worked alone in her capacity as a mail clerk.
3. On 6 August 2002, plaintiff got on the elevator of defendant-employer's building on the 9th floor and pushed the button for the 8th floor. The elevator malfunctioned, dropping floor by floor until it reached the 2nd floor. When it reached the 2nd floor, the elevator fell to the basement causing plaintiff to fall against the wall; then the car began rising again. When the elevator stopped between floors, a maintenance man pried the doors open and plaintiff was pulled up and out of the elevator.
4. Plaintiff's supervisor was notified of the incident and took plaintiff to Durham Regional Hospital for treatment. During the ride to the hospital, plaintiff broke down and experienced an episode of uncontrollable sobbing. Plaintiff's physical injuries consisted of a pulled groin muscle and a headache. Plaintiff was treated at the hospital and referred to Triangle Orthopaedics for physical therapy. She missed between one and two weeks of work as a result of the injuries sustained in the elevator accident.
5. When plaintiff returned to work, she was assigned to the operations center, a single-level building without elevators. The center was a much larger building than the one plaintiff left, and plaintiff had six co-employees performing the mail-related duties. Plaintiff's duties consisted of sorting mail.
6. After a period of time, plaintiff requested to return to the main CCB building. She had learned that new, computer-run elevators were being installed and decided that she preferred to work alone and perform all the mail-related duties, rather than sharing those duties with others. On 1 October 2003, after having returned to the main CCB building, plaintiff was again involved in an elevator accident. Plaintiff entered the elevator on the 12th floor and when the doors closed, the car fell to the 10th floor, slamming to an abrupt halt. The door would not open and plaintiff called for assistance. When she was released from the elevator, plaintiff took the stairs the rest of the way down, called her supervisor to tell her she was leaving, and left the building. Plaintiff thereafter returned to work at the operations center.
7. As a direct result of these two elevator accidents, plaintiff presented to Dr. Tim Stroupe who is board certified in psychiatry and neurology, on 16 October 2003. Plaintiff had complaints of anxiety, tremulousness, elevated heart rate, palpitations and nightmares resulting from the 6 August 2002 elevator accident. After the second elevator accident, plaintiff reported that she also had symptoms of depression, anhedonia (inability to experience pleasure), poor sleep, low energy, difficulty concentrating and poor appetite and psychomotor agitation. Plaintiff also reported a history of treatment for depression and anxiety beginning in 1996, which had been successfully treated with Prozac and Xanax. Dr. Stroupe diagnosed plaintiff with major depressive disorder and either an anxiety disorder or post-traumatic stress disorder (PTSD). He placed her on Klonopin and continued her Prozac prescription. Dr. Stroupe causally related plaintiff's condition to the trauma she suffered as a result of the two elevator accidents.
8. Dr. Stroupe provided treatment to plaintiff several times during October, November, and December 2003. By 30 December 2003, plaintiff's depressive symptoms had improved, but she still had significant anxiety, an irritable mood and was fearful of being in an elevator. He gave plaintiff a follow up appointment for 12 February 2004.
9. In early January 2004, at her own request, plaintiff transferred back to work at the main CCB building. On 12 January 2004, plaintiff was involved in an automobile accident where she was hit from the front and pushed into another car behind her. Plaintiff suffered a cut on her collarbone from the seatbelt and some lower chest, rib and neck pain. Plaintiff was taken out of work for 3 days due to these symptoms. Plaintiff did not return to work following the accident.
10. When plaintiff presented to Dr. Stroupe for a scheduled appointment on 12 February 2004, her depressive symptoms had worsened. Plaintiff was also suffering a recurrence of anhedonia, lack of sleep, poor concentration, easy distraction and poor appetite. She continued to have significant anxiety symptoms, chest pain resulting from anxiety, dizziness and muscle tension. Dr. Stroupe opined that plaintiff's anxiety symptoms were triggered whenever plaintiff thought about being in an elevator, with the symptoms being worse when at work. Dr. Stroupe wrote plaintiff out of work.
11. Dr. Stroupe continued to treat plaintiff through 29 April 2004, at which time he was preparing to move his practice to New York. He also continued her out-of-work notes for four weeks at a time, opining that plaintiff was completely disabled from work. Although he had not physically seen plaintiff since 29 April 2004, on 5 June 2004, Dr. Stroupe continued plaintiff out of work until 1 November 2004, due to the "refractory nature" of her symptoms and her "poor response to treatment."
12. In May 2004, plaintiff was involved in a second motor vehicle accident in which a sports utility vehicle pushed her into a concrete construction barrier on an entrance ramp. It does not appear that plaintiff suffered any physical injury from this accident, although she did experience a panic attack in the car immediately following the collision.
13. In a letter to defendant-carrier dated 23 July 2004, Dr. Stroupe noted that plaintiff "continues to have significant depressive symptoms including depressed and irritable mood, anhedonia, insomnia, and poor concentration. She continues to have significant anxiety with physiologic activation and ruminative worry." Dr. Stroupe opined that plaintiff "was having significant symptoms as a result of the elevator accidents, and then her symptoms got worse after she had the car accident and prevented her from being able to go back to work."
14. In his letter, Dr. Stroupe is referring to the vehicular accident of 12 January 2004. He testified that he did not remember any discussion with plaintiff concerning the second motor vehicle accident in May 2004. On 29 April 2004, Dr. Stroupe was of the opinion that plaintiff was totally disabled and wrote her out of work until 1 September 2004.
15. On 16 August 2004, plaintiff presented to psychiatrist, Dr. Robert Winton, upon referral of Dr. Stroupe. Dr. Winston is board certified in psychiatry and neurology. Dr. Winton did a general psychiatric evaluation and reviewed plaintiff's notes from Dr. Stroupe. He was unaware of the May 2004 vehicular accident. Dr. Winton noted that plaintiff experienced an acute traumatic reaction with lots of fear and anxiety after the first elevator accident. She could not go into the elevators for a couple of months. She was transferred to a job where she did not need to ride the elevators and her symptoms settled down substantially after a couple of months. She then experienced a second elevator accident, which increased her fear of elevators. Plaintiff had done "a pretty good job of overcoming her anxiety after the second elevator fall" and had returned to work, but after the January 2004 car accident "her nerves were shot" and "she could hardly function." At the time of his initial consultation, plaintiff was able to ride other elevators but was "still very fearful of the ones in that main CCB building."
16. On 16 August 2004, Dr. Winton diagnosed plaintiff with PTSD beginning to resolve, but an anxiety disorder that remained with a specific phobia of the elevators in the CCB building. Plaintiff also had loss of weight, poor energy, poor concentration and other symptoms indicative of depression. He continued the medication regimen begun by Dr. Stroupe and opined that plaintiff was so scattered and anxious that she was unable to return to work in any job.
17. Plaintiff continued to treat with Dr. Winton and by 8 December 2004, he noted some improvement in plaintiff's symptoms, but he did not believe plaintiff could return to work. In January 2005, plaintiff began to earn some income by renting a room in her home and by sitting with an elderly person in her neighborhood. The Full Commission finds as fact that the income from rent and sitting with an elderly person is not indicative of plaintiff's ability to obtain employment in the competitive market or that she was no longer disabled as of 26 January 2005.
18. By February 2005, plaintiff began providing some cleaning services to a few houses to earn extra money. The Full Commission finds as fact that this employment is indicative of plaintiff's ability to earn wages and reflects a lessening of her disability. Dr. Winton opined that as of 9 February 2005, had there been a job for plaintiff with defendant-employer that did not involve elevators, she probably could have returned to work. Dr. Winton's sole restriction for plaintiff's return to work was that she should stay away from all elevators for at least some time after beginning a new position.
19. It is noted that at the time Dr. Winton opined that plaintiff could return to work, defendant-employer had been bought out by another banking firm and due to resulting staff cutbacks did not have a position available for plaintiff.
20. Dr. Winton opined and the Full Commission finds as fact that plaintiff's condition was caused by the initial elevator accident and the subsequent elevator accident, which created a PTSD syndrome within plaintiff that was accentuated or re-awakened by the automobile accident of January 2004. Dr. Winton further opined that the incidents were all traumatic and that the second motor vehicle accident stirred up the same symptoms that occurred after the first two elevator accidents. As a result, plaintiff experienced a phobic avoidance where she was physically unable to enter the area where the traumatic event occurred, or return to any work. Plaintiff also experienced interpersonal irritability and an increased startle reflex that also rendered her incapable of working.
21. Dr. Winton also opined that the motor vehicle accidents aggravated the condition from which plaintiff was already suffering due to the elevator accidents. Although he opined that absent the motor vehicle accident of 12 January 2004, plaintiff might have been able to continue working, he also opined that the motor vehicle accident alone would not have caused plaintiff's symptoms. Dr. Winton last treated plaintiff on 30 March 2005.
22. On 4 May 2005, plaintiff presented for a one-time evaluation by Dr. Robert L. Conder, a psychologist. Following an examination of plaintiff, including the administration of tests, and a review of the records of Dr. Stroupe and Dr. Winton, Dr. Conder opined that plaintiff's 12 January 2004 motor vehicle accident aggravated her then existing psychiatric condition which led to her total disability. He further opined that plaintiff's anxiety condition was due solely to the automobile accidents of January 2004 and May 2004 and not to the elevator incidents.
23. Because plaintiff underwent long-term treatment by two psychiatrists, Dr. Stroupe and Dr. Winton, and their treatment of plaintiff occurred much closer in time to the incidents that combined to create plaintiff's symptomology, whereas the evaluation by Dr. Conder, a psychologist, was short in duration and remote in time relative to the incidents in question, greater weight is given by the Full Commission to the opinions on causation reached by Dr. Stroupe and Dr. Winton over those of Dr. Conder.
24. Plaintiff suffered an injury by accident on 6 August 2002, and again on 1 October 2003, arising out of and in the course of her employment with defendant-employer when the elevators in which she was riding malfunctioned and fell several floors. As a result of her injuries by accident plaintiff developed anxiety, depression and PTSD.
25. Based upon the greater weight of the evidence, the Full Commission finds as fact that although plaintiff returned to work following the initial elevator accident of 6 August 2002 and again following the second elevator accident of 1 October 2003, she continued to suffer from symptoms of anxiety, depression and PTSD, including a fear of the elevators in defendant-employer's building which her treating physicians diagnosed as PTSD. The automobile accidents of January 2004 and May 2004 aggravated plaintiff's work-related PTSD, depression and other related psychological conditions resulting from the elevator accidents, and both the elevator accidents and the motor vehicle accidents contributed to, and rendered plaintiff totally disabled from employment during the period from 12 January 2004 through 9 February 2005, when she was deemed able to work by Dr. Winton.
26. Based on the greater weight of the evidence, the motor vehicle accidents alone did not cause plaintiff's disability. The motor vehicle accidents aggravated plaintiff's already existing anxiety, depression and PTSD which were causally related to the two elevator accidents to the point where these conditions became disabling. The two elevator accidents significantly contributed to plaintiff's total incapacity to work in any employment from 12 January 2004 through 9 February 2005 and her diminished wage earning capacity thereafter.
27. Plaintiff's average weekly wage at the time of her 6 August 2002 injury by accident was $493.88, yielding a compensation rate of $329.26 per week.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment on 6 August 2002 and again on 1 October 2002 when the elevator in which she was riding malfunctioned. As a result of her injuries by accident, plaintiff developed depression, anxiety and PTSD, which significantly contributed to her disability. Plaintiff is therefore entitled to compensation. N.C. Gen. Stat. § 97-2(6); Baker v. City ofSanford, 120 N.C. App. 783, 463 S.E.2d 559 (1995).
2. Plaintiff's psychological conditions resulting from her work-related injuries by accident were aggravated by her two subsequent motor vehicle accidents and, in combination, caused her to became totally disabling from working in any employment from 12 January 2004 through 9 February 2005 and partially disabled thereafter. N.C. Gen. Stat. § 97-2(6); Hoyle v.Carolina Associated Mills, 122 N.C. App. 462, 470 S.E.2d 357
(1996).
3. As a result of her compensable injuries, plaintiff is entitled to temporary total disability compensation at the rate of $329.26 per week for the period from 12 January 2004 through 9 February 2005. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to partial disability compensation equal to sixty-six and two-thirds percent of the difference between her pre-injury average weekly wage and the weekly wages she is able to earn after 9 February 2005, for a period of up to 300 weeks from the date of her 6 August 2002 injury. N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of her compensable injury, for so long as such treatment may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay temporary total disability compensation to plaintiff at the rate of $329.26 per week for the period from 12 January 2004 through 9 February 2005. As said compensation has already accrued, it shall be paid in a lump sum.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay partial disability compensation to plaintiff at a rate equal to sixty-six and two-thirds percent of the difference between plaintiff's pre-injury average weekly wage and the weekly wage she is able to earn after 9 February 2005, for a period of up to 300 weeks from the date of injury on 6 August 2002.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in Paragraphs 1 and 2 above is hereby approved to be deducted from the sum due plaintiff and paid to plaintiff's counsel as follows: one fourth of the lump sum payment due plaintiff shall be paid directly to plaintiff's counsel; thereafter, one-fourth of the weekly partial disability compensation due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Defendants shall pay the costs.
This the __ day of June 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER