***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rowell with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named Employee and the named Employer.
3. The Employer is self-insured and Key Risk Management Services is the Third Party Administrator.
4. Plaintiff's average weekly wage is $452.97, which yields a compensation rate of $301.99.
5. The Employee sustained an injury by accident on April 7, 2006.
6. The issue is what injury is compensable?
7. The parties stipulated into evidence as Stipulated Exhibit No. 1-Pre-Trial Agreement, as amended and initialed by the parties.
8. The parties stipulated into evidence as Stipulated Exhibit No. 2-Medical records.
9 The parties stipulated into evidence as Stipulated Exhibit No — Industrial Commission forms.
10. The parties stipulated into evidence as Stipulated Exhibit No. 4-Discovery responses.
 ISSUES
1. Issues of Plaintiff:
 a. Whether Plaintiff's psychological condition is causally related to her compensable injury by accident of April 7, 2006? N.C. Gen. Stat. § 97-25.
 b. What, if any, indemnity benefits is Plaintiff entitled to?
 c. Is Plaintiff entitled to ongoing medical treatment for injuries sustained in the compensable accident arising out of and in the course of her employment to include treatment for her psychological condition? *Page 3 
 d. Is Plaintiff entitled to have medical bills related to psychological treatment paid for by the Defendant-Carrier?
2. Issues of Defendant:
 a. Does Plaintiff have continuing disability as a result of the April 7, 2006 accident?
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner Plaintiff was fifty-two (52) years old. Plaintiff has a high school education, and has taken several college courses. Plaintiff has work experience in the food service industry, having worked in various restaurants. Plaintiff has also worked in sewing plants, and as a substitute teacher and bus driver.
2. Plaintiff's last job, which she began on February 2, 1998, was with the North Carolina Cooperative Extension. Plaintiff's position was that of Program Assistant which entailed recruiting families receiving assistance such as WIC and food stamps. Plaintiff initially worked with adults, but was later assigned to work with youth. In that capacity, Plaintiff educated youth about nutrition and physical activity.
3. Plaintiff's supervisor at the North Carolina Cooperative Extension was Stephanie Patterson, the Nutrition Program Supervisor. Plaintiff was also supervised on a daily basis by Jacqueline Roseboro, the County Extension Director. During the course of her employment, Plaintiff had several evaluations and received periodic pay raises.
4. Plaintiff was involved in two motor vehicle accidents prior to April 7, 2006. *Page 4 
5. On December 26, 2001 Plaintiff underwent surgery on her cervical spine which was performed by Dr. Wilfong. Plaintiff was out of work for approximately one month following the surgery. When she returned to work, restrictions were placed on Plaintiff's ability to lift and pull heavy items. These restrictions were removed after one year.
6. Plaintiff began treating for depression in January 2006. Plaintiff has a long history of depression which dates back to her early childhood.
7. On April 7, 2006 Plaintiff was traveling with several co-workers from a meeting in Scotland County when their vehicle was rear-ended by another vehicle. The accident resulted in less than $200.00 in damage to the vehicle. Plaintiff's co-worker, Rosie McQuillan, who was also a passenger in the vehicle, described the accident as, "very little impact," "a little bump."
8. Following the accident Plaintiff was treated at Whiteville Urgent Care where she was diagnosed with a neck strain. Plaintiff was released to return to work the same day without restrictions.
9. On April 13, 2006 Plaintiff was seen by Dr. Barnhill, her family physician since October 2004. At that time Plaintiff complained of neck and right shoulder pain and headaches. Dr. Barnhill recommended an MRI and kept Plaintiff out of work. Dr. Barnhill related Plaintiff's depression to the April 7, 2006 accident based on Plaintiff's increased reporting of symptoms following the accident. However, Plaintiff's first mention to Dr. Barnhill did not occur until on or about May 29, 2007, over one year after the accident of April 7, 2006. Dr. Barnhill was unable to successfully determine the source of Plaintiff's pain or come up with a clinical diagnosis for her depression.
10. Dr. Barnhill released Plaintiff from her care on August 21, 2008 when she learned that Plaintiff was obtaining duplicate prescriptions for pain medication from other physicians. *Page 5 
11. Plaintiff also sought treatment with Dr. George V. Huffmon, a board certified neurological surgeon. Dr. Huffmon first saw Plaintiff on September 21, 2006 at which time Plaintiff complained of neck, shoulder and leg pain and headaches. While Dr. Huffmon opined that Plaintiff's April 7, 2006 motor vehicle accident aggravated her pre-existing cervical condition, he also stated that he was, "at a loss to place a percentage of liability on that motor vehicle collision for her permanency of her symptomatology." In making this statement Dr. Huffmon noted that in the two months preceding the accident, Plaintiff was experiencing so much pain in her neck that she had two MRIs. In addition, Dr. Huffmon reviewed films of Plaintiff taken prior to and following the accident and noted no significant change. Dr. Huffmon opined that the April 7, 2006 accident aggravated Plaintiff's depression because it aggravated her pain, however, he also noted that Plaintiff suffered from depression prior to the accident. Dr. Huffmon ultimately referred Plaintiff to the professional she was already seeing to determine causation stating, "I am a neurosurgeon not a psychiatrist."
12. Plaintiff began treatment with Dr. Sunil K. Arora, a board certified anesthesiologist and pain specialist, in January 2007. When asked whether he thought the April 7, 2006 accident exacerbated Plaintiff's cervical condition, Dr. Arora opined that the accident exacerbated Plaintiff's chronic pain and psychosocial stress factors. Dr. Aurora based this opinion on the questionnaire which Plaintiff completed at her first visit with him, the referral notes from Dr. Huffmon, and other information provided by Plaintiff. When asked whether he found any objective reason for Plaintiff's continued complaints of pain, Dr. Arora stated that the objective findings were consistent with the cervical fusion surgery which was prompted by chronic pain. Dr. Arora felt Plaintiff's depression was aggravated by the April 7, 2006 accident and indicated that anybody who had a car accident feels depressed. However, Dr. Arora did not *Page 6 
diagnose or treat depression and felt Plaintiff would benefit from seeing a mental health professional. Dr. Arora further noted that, until May 22, 2007, Plaintiff was able to manage her depression and continue working. Dr. Arora also observed about Plaintiff, "she seems very determined that we need to write out of work notes for her."
13. Plaintiff continued working and worked without restrictions until May 21, 2007 on which date she was questioned by Ms. Roseboro about her training log. Ms. Roseboro's questioning was prompted by a personnel issue which brought into question whether Plaintiff had actually provided training to certain accounts. Plaintiff provided several stories regarding the whereabouts of her training log which contained information for the entire fiscal year and which was used to compile the training statistics which formed the basis for funding for the program. Later the same day, when Plaintiff knew that Ms. Roseboro would be out of the office, Plaintiff brought back a note for Ms. Roseboro which restricted her ability to drive.
14. Plaintiff did not return to work after May 21, 2007 despite the fact that Defendant-Employer could have accommodated Plaintiff's restriction. Employer held Plaintiff's job open until February 2008, at which time her one year contract was not renewed. Plaintiff resigned from her position on February 1, 2008. Plaintiff chose to resign rather than account for discrepancies with her training log.
15. In 2008 Dr. Barnhill and Dr. Arora referred Plaintiff to Evergreen Behavioral Management for treatment with Sonja L. Greiner, a nurse practitioner who is board certified in psychiatry. Following her first visit on March 12, 2008, Ms. Greiner diagnosed Plaintiff with major depressive disorder, recurrent severe with psychosis. Ms. Greiner noted that Plaintiff had depression with tearfulness, sadness, hopelessness, loss of motivation and energy, sleep loss, insomnia or too much sleep, and poor appetite. Ms. Greiner further noted that the onset of *Page 7 
depression was in May 2007, when Plaintiff erroneously reported that Dr. Arora, "took me out of work and nobody called me." It was Ms. Greiner's opinion that Plaintiff's depression related more to her separation from her job and her feelings towards her former co-workers than to chronic pain. Ms. Greiner last saw Plaintiff on August 15, 2008 at which time Plaintiff expressed problems relating to social isolation and not being able to go to work.
16. Plaintiff received short term disability from the State from May 22, 2007 through May 31, 2008.
17. Plaintiff's testimony that the onset of her depression prior to May 22, 2007 was the reason for her leaving her employment is not accepted by the Full Commission as credible. Plaintiff's resignation is a part of the evidence of record and the greater weight of the evidence shows that Plaintiff resigned for reasons unrelated to her workers' compensation injury.
18. Based on her board certification in psychiatry, and based on her status as the medical provider to whom Plaintiff was referred by Drs. Barnhill and Arora for treatment of her mental health condition, the undersigned assigns greater weight to the testimony of Ms. Greiner regarding any causal link between Plaintiff's long standing depression and the motor vehicle accident on April 7, 2006. Any depression Plaintiff experienced after April 7, 2006 is not as a result of the work related injury, but is due to pre-existing depression and as a result of the events surrounding her voluntary job resignation.
 *********** *Page 8 
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On April 7, 2006 Plaintiff sustained an admittedly compensable injury by accident resulting in a cervical strain. However, any depression Plaintiff experienced thereafter is not as a result of this injury. N.C. Gen. Stat. § 97-2(6).
2. Under North Carolina law, Plaintiff carries the burden of establishing a clear causal connection between the accident and a condition allegedly causing disability. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert testimony is required, and it cannot be based on speculation, mere possibility or purely a temporal relationship between the accident and the condition. Young v. Hickory BusinessFurniture, 353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). In this case, no objective findings were made as to the source of Plaintiff's complaints of pain following the April 7, 2006 accident, and she was ultimately referred to pain management because no objective cause could be found. Plaintiff was treated based only on her reports of pain and her relation of those complaints to the April 7, 2006 accident. Having weighed all of the lay and medical evidence, the Full Commission finds that no compensable consequences resulted from the April 7, 2006 accident. Therefore, Defendant is not obligated to pay medical expenses beyond Plaintiff's April 7, 2006 treatment with Whiteville Urgent Care, or any indemnity benefits.
3. Regarding Plaintiff's longstanding depression, the greater weight of the competent evidence fails to establish a causal relationship between Plaintiff's now resolved purported cervical neck strain and her psychological condition. Ms. Greiner, the only individual board certified in psychiatry to provide testimony, and the medical provider to whom Drs. *Page 9 
Barnhill and Arora referred Plaintiff, and to whom Dr. Huffmon deferred, testified that Plaintiff's depression related more to her separation from her job and her feelings towards her former co-workers than to chronic pain. Plaintiff's voluntarily leaving her employment, failure to return to work, and subsequent resignation, all of which are unrelated to the incident on April 7, 2006, is an intervening cause for her depression which was pre-existing.Baker v. City of Sanford,120 N.C. App. 783, 463 S.E.2d 599 (1995). Therefore, medical expenses related to Plaintiff's depression are not reasonably related to her compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for disability benefits associated with her purported cervical neck strain injury is denied.
2. Defendant shall pay for any expenses associated with Plaintiff's April 7, 2006 treatment at Whiteville Urgent Care.
3. Plaintiff's claim for benefits associated with her depression is denied.
This the 1st day of March, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ PAMELA YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER